CORA PAULSON v. HUBERT L. CAVE AND ANOTHER.[1]

March 4, 1932.

No. 28,701.

[1]Reported in 241 N. W. 678.

*Snyder, Gale & Richards,* for appellants.
*George W. Peterson* and *Forrest R. Poppe,* for respondent.

HILTON, J.

Defendants, copartners doing business under the firm name and style of St. Paul Drive Yourself System, appeal from a judgment against them for $1,089.62, recovered by plaintiff in an action for personal injuries sustained by her in an automobile accident claimed to have been caused by defendants' negligence. The case was tried to a jury. At the close of the evidence defendants' motion for a directed verdict was denied. At the coming in of the verdict defendants moved that the verdict be vacated and set aside and for judgment notwithstanding the verdict. Both motions were denied.

There are no assignments of error relative to rulings on admission or rejection of evidence or as to the charge of the court to the jury. The assignments are generally that the judgment was not sustained by the evidence and was contrary to law and that the court erred in denying the motions of defendants hereinbefore referred to. The evidence in some particulars was in dispute. On this appeal that most favorable to the plaintiff is to be considered.

Defendants' business was conducted with a fleet of 12 cars; and, as the firm name implies, they were generally rented to persons wishing to drive the cars themselves. However, when desired, drivers were furnished. Defendants employed one Miller, who when neither partner was present had charge of the business. He had authority to rent cars and, if occasion required, to furnish drivers therefor.

On July 3, 1930, Marvin Paulson, a minor son of plaintiff, rented a car for one day from one of defendants personally for the purpose of driving to Buffalo Lake, Minnesota. The required rental deposit was made. Marvin did not return at the promised time, but telephoned Miller the next day that he would be back that evening. He did not return, and Miller, as was proper for him

to do, made inquiry of plaintiff's daughter, who lived in St. Paul and whose name had been given by Marvin as a reference. The daughter went to Centuria, Wisconsin, where the mother lived, and they both came to St. Paul the afternoon of July 6. They went to defendants' place of business and interviewed Miller, who was in charge. With Miller's knowledge, plaintiff endeavored to secure transportation to Buffalo Lake by bus or train but was unsuccessful. Miller told her that if he could get a man to go along with him to drive the missing car back he would go the next morning to Buffalo Lake, and invited plaintiff to go with him. Miller telephoned one of the defendants and secured his express permission to make the trip to repossess the car and to take plaintiff with him. Miller said he would call for plaintiff the next morning, July 7. On that morning he went to the rooming place of one Block, who was a frequenter of defendants' place of business, and at four o'clock took him in the car to the place where plaintiff was staying over night with her daughter. In the car (a Ford coach) they proceeded toward Buffalo Lake, Miller driving, Block in the front seat with him, and plaintiff in the rear seat.

They arrived at Buffalo Lake between six and seven o'clock that morning and stopped at a filling station. Miller left the car and went to the filling station to make inquiries relative to Marvin and the car. The station not being open, he proceeded to another one near by for the same purpose. After Miller left the car Block moved over into the driver's seat. Miller had left the switch key in the car. Had he taken the key with him the accident could not have occurred. Block saw the missing car moving away a short distance from where he was. (It developed afterwards that it was being driven by Marvin.) Block turned on the switch, wheeled the car around, and started rapidly in pursuit. Plaintiff did not know the car or its number and did not see Marvin; she asked Block how he knew it was the car, and he answered, "By the number."

Miller had a revolver in the pocket of the door on the left-hand side of the car, which he testified he had taken along for protection, and that experiences on previous trips showed the necessity therefor. During the pursuit Block took the revolver from the pocket

and fired it. Plaintiff testified that she tried to get out of the car and asked Block to stop. This Block denied. The jury believed plaintiff. Because of the reckless and negligent driving by Block, in disregard of plaintiff's protests, an accident occurred, the car going into a ditch and plaintiff receiving serious injuries. The extent of the injuries is not questioned.

Defendants' position is that Miller had no express or implied authority to secure Block's assistance and that they were not responsible for his subsequent acts nor for those of Block which resulted in the accident. Plaintiff's position is that as a passenger and occupant of defendants' car she was entitled to due care; that the car was under the control of defendants and without any control on her part; that the trip to Buffalo Lake was in furtherance of the business of defendants and that the car was being used for the purpose of repossessing the missing car; that Block was the agent and servant, express or implied, of defendants in the furtherance of their interests; that Block was taken along for the purpose of taking charge of one of their cars on the return trip to St. Paul; that Miller left Block in charge of the car, who while in such charge did the acts causing the accident, Block, by the act of Miller, being the only one left in control of the car.

Miller had express authority to make the trip to repossess the car and to bring it back and to take plaintiff along on the trip. All things necessary or properly incidental to the performance of the purpose of the trip were under the control of Miller and within the scope of his masters' business. He was not on a mission, personal to himself. Under the evidence the jury had the right to conclude that the purpose of taking Block along was to aid in repossessing the car and, when so repossessed, to drive one of the cars back. While on this trip for repossessing the car, Miller had as much authority as would one of the defendants. The jury might reasonably infer and find that when Miller left the car with the switch key in place it was left in Block's charge and under his control. Had Miller himself done the acts which Block did, defendants' liability for the injuries could not well be questioned.

We think that under all the circumstances of the case defendants were responsible for the acts of Block.

It will not do, under a situation as here presented, to indulge in fine-drawn distinctions in an endeavor to limit Miller's authority to take Block along. It was a reasonable thing to do. It was more than likely that the missing car would be found abandoned, in which event there would be a necessity for having someone drive it back. Block was taken along for that purpose. The jury was justified in finding that the acts of Block and Miller were done in the course of and within the scope of their employment as an incident of defendants' business and as a means of furthering it. Neither was a volunteer. The jury was not required to conclude that Miller, having authority to do everything else he did, did not have authority to take Block along, especially when we consider the scope of Miller's general duties in relation to defendants' business, as disclosed by the evidence. The purpose of the trip was to recapture the missing car. Block saw it and, in furtherance of that purpose, started in pursuit. His negligent driving in the course of that pursuit resulted in the accident.

It is not necessary to refer to numerous cases cited on both sides relative to the doctrine of respondeat superior. The law relative thereto is well settled. Cases having to do with nonliability because of the acts of a volunteer are in no sense applicable here. The decisions of this court on the propositions here involved are referred to in 4 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 5833-5834. We have carefully considered the record and the written and oral arguments of counsel. The jury resolved the issues of fact in favor of plaintiff, as it had a right to do under the evidence; that determination justified the rendering of a verdict for plaintiff.

Affirmed.

STONE, J. (concurring).

I concur in the result. Taking the view of the facts most favorable to plaintiff, the emergency may have required additional assistance, and Miller's authority to procure it might be implied. Haluptzok v. G. N. Ry. Co. 55 Minn. 446, 57 N. W. 144, 26 L. R. A. 739;

Hollidge v. Duncan, 199 Mass. 121, 85 N. E. 186, 17 L.R.A. (N.S.) 982. The fact of Miller's agency for defendants being unquestioned, I think it was a fair question for the jury whether it was within the scope of his authority, which must be largely implied from the circumstances, to enlist the aid of Block in the recovery of the missing car. An affirmative answer to that question is implicit in the verdict. To me it seems to have a reasonable basis in the evidence.

There remains the question whether Block was acting within his authority in pursuing the missing car. The mission of both Miller and Block being the recovery of that car, it cannot reasonably be supposed that either would not have pursued it on sight if pursuit appeared necessary to the accomplishment of their mission. Assuming for Block the authority attributed to him by the jury, he would have been derelict in his duty had he not taken prompt and energetic steps to recover the property of defendants which he was employed to retrieve, its repossession being his pressing and only mission of the moment.

WILSON, C. J. (dissenting).

The undisputed evidence is that Block asked to go on the trip for a ride. But assuming that he went along in the interests of defendants, the evidence is that his mission was solely to drive the car back, if found. The record is barren of any direct evidence to show that he in any way represented defendants for any other purpose. Miller never asked Block to do what he did do. Miller had no reason to anticipate such action on the part of Block. In my sight Block was a volunteer, and I cannot concur in a holding that so deprives defendants of their property. Liability is a serious matter, and a defendant ought not to be liable until his conduct, or the conduct of his employes, in the scope of their employment, invokes liability by wrongful conduct. It seems to me that Block had no authority to act for defendants at the time plaintiff was injured and that he was not then acting within the scope of his employment, assuming that he was an employe for the purpose of driving a car from Buffalo Lake to St. Paul. To permit a recovery upon such a record as this makes it dangerous for one to have an employe

for any purpose if he is to be responsible for every act of the employe, who upon his own initiative and without authority assumes to act in the interest of his employer. Just because defendants authorized Miller to find and get the car, it does not, or at least should not, make them responsible for the negligence of every bystander or other party who volunteers to help in apprehending the wrongdoer or in repossessing the car.

DIBELL and LORING, JJ. (dissenting).
We concur in the dissent.

