## 10142

SPIGENER *ET AL.* v. SEABOARD AIR LINE RY. *ET AL.*

(98 S. E. 330.)

1. DISMISSAL AND NONSUIT—DISMISSAL OF ONE DEFENDANT.—In an action against a carrier and Pullman Company for leaving a sick passenger at the station after having been notified of her intention to board a Pullman, it was not error, as against the railway, to dismiss as to the Pullman Company, although notice through the Pullman employees of the passenger's intention to board had been given the carrier; plaintiff not relying alone on such notice, but upon actual notice to the railway's agents.

2. CARRIERS— CARRIAGE OF PASSENGERS— QUESTIONS FOR JURY.— In an action against a carrier for leaving a sick passenger at the station after having notice that she intended to board the train, whether sufficient notice was given the ticket agent of the sickness of plaintiff so as to require his assistance *held* for the jury.

3. CARRIERS— CARRIAGE OF PASSENGERS— BOARDING TRAINS— QUESTIONS FOR JURY.—Where a conductor of a passenger train knew he had left behind a passenger who intended to board the train at the station, it was a question for the jury whether it was his duty to go back to the station for such passenger.

4. MASTER AND SERVANT — VERDICT AND JUDGMENT — CODEFENDANTS — DAMAGES—AMOUNT.—In an action by a passenger against a carrier, its employees, and a Pullman Company for being left at the station when intending to board, it was not improper to return a verdict and to enter judgment for a larger amount against the carrier than against its servants.

5. MASTER AND SERVANT—VERDICT AND JUDGMENT—SERVANT AS JOINT DEFENDANT.—Where a servant is united with a master in an action for damages for tort, and the tort was that of the servant alone, a verdict and judgment against the master alone cannot stand, but, if other servants are involved, the jury might find that the tort was committed by them and may find against the master alone.

6. CARRIERS—CARRIAGE OF PASSENGERS—NOTICE OF INTENTION TO BOARD TRAIN.—In an action against a carrier for leaving an intending passenger at the station, a verdict for plaintiff was not improper because no notice that the passenger was ill was given the railroad company before the train left the station, when it appeared that it had sufficient notice after the train left and while they might still have gone back.

7. Carriers — Passengers — Opportunity to Board Train —Punitive Damages.—In an action against a carrier for leaving a passenger at the station knowing that she was sick and intended to board the train, a verdict of $5,000 punitive damages was not excessive.

8. Appeal and Error—Objections Below—Argument of Counsel.— Where no objection to the arguments of counsel is made at trial, the question will not be reviewed on appeal.

Before Memminger, J., Richland, Spring term, 1918. Affirmed.

Action by Sallie Glass Spigener and another against the Seaboard Air Line Railway and others. Judgment for plaintiffs, and defendants appeal.

*Messrs. Lyles & Lyles,* for Seaboard Air Line Railway, appellant, submit: *That it is perfectly clear that the Seaboard Air Line Railway, and the Pullman Company were jointly liable to the plaintiff for any negligence or wilfulness on the part of the employees of the Pullman Company in performing the duty of entraining the plaintiff, and hence it was error to dismiss the Pullman from the case:* 84 S. C. 291; 89 S. C. 287; 90 S. C. 358; *The George A. Fuller Company, Petitioner, v. Otis Elevator Company,* decided in the U. S. Supreme Court January 14, 1918; Advance Sheets of U. S. Supreme Court Reports, No. 6, at p. 273; 161 U. S. 316; 40 L. Ed. 712 (note); 86 C. C. A. 387; quoted in note 7, subd. A; 10 C. J., 1181. *Notice of plaintiff's sickness did not impose upon the agent of the railway company the duty of assisting the plaintiff on to the train, if the agent knew that she was accompanied by several persons capable of assisting her, unless it was shown by a preponderance of the evidence that her sickness was of such a degree as to require his assistance:* 42 Miss. 607; 97 Am. Dec. 478-481-499-500; 3 Col. 344; 67 S. C. 61; 6th Cyc. 611; 52 Minn. 296; 38 Am. St. Rep. 557. See note at page 560; 18 L. R. A. 602; 46 S. C. 219. *It was not the duty of the conductor to run the train back to Fairfax, after it had left the station, to take up the plaintiff, Mrs. Spigener:* 42 Miss. 607; 97

Am. Dec. 478; 69 S. C. 135; 84 S. C. 295. *It was error for his Honor, the Circuit Judge, to instruct the jury that they might find a verdict for actual damages against the railway company without finding a verdict for the same amount, or any part thereof, against the servants of the company, parties to the action, and also that in finding for punitive damages they might find a larger amount against the railway company than against its servants who caused the damage:* 104 S. C. 266. *No railroad company is bound to take as a passenger on its train a woman in actual labor as Mrs. Spigener was supposed to be, and she cannot claim any greater rights than would have been hers if her supposed true condition had been made known and they had refused her as a passenger:* 107 Am. St. Rep. 295.

*Messrs. Tompkins, Barnett & McDonald* and *W. H. Cobb.* for respondent. *Messrs. Tompkins, Barnett & McDonald,* submit: *That while railroad companies may be held liable where the Pullman employees negligently performed duties which arose under the carriers contract of transportation:* 84 S. C. 291; 89 S. C. 287; 90 S. C. 358. *In the case at bar, the damage was caused by the delict of the railway employees and not by the Pullman employees. The citation from 86 C. C. A., p. 287, seems to be in direct conflict with the views, which counsel for appellant seeks to promulgate. The conductor had notice that there was a sick lady to get on, and the flagman had notice that they were leaving a sick lady. It was their duty to observe such extra care as might be necessary to facilitate her safe and comfortable passage:* 78 S. C. 70; vol. I, Code 1912; 65 S. C., p. 1; 10 Wall., p. 129. *There was no error in instructing the jury that they might find verdicts in different amounts against the several defendants. The negligence and wilfulness going to make up the damage sustained by plaintiff was present in the case by Brooks, Rhodes and Reed and the superintendent of the railroad company, and the Jones and Sparks cases would not*

*apply, in that they refer only to those cases in which the only delict was by and through the certain agent who was being sued:* 106 S. C. 20; 104 S. C. 266. *The jury may have found that Brooks and Rhodes were guilty of wilful acts with enough actual damage to support the verdicts given against them, and concluded that the real cause of plaintiff's great loss was the act of flagman Reed in failing to stop the train; and the act of the superintendent in not only failing to make any provision for carrying her to Columbia, but in sending her a message, which was calculated to lend her hope of aid, when he knew there was no chance:* 101 S. C. 20; — S. C., p. 108; 97 S. C. 385. *The question as to the deeds which support the punitive damages against the defendants, Rhodes and Brooks, is fully covered:* 77 S. C. 62; 108 S. C. 219; 101 S. C. 20.

*Messrs. Barron, McKay, Frierson & Moffatt,* for the Pullman Company, submit: *The Pullman Company is not responsible:* 83 S. C. 454. *There is a distinction between contracts of carrier and Pullman:* 159 Fed. 387, 389; and cases therein cited; 2 Hutchinson on Carriers (3d Ed.), sec. 1130; 4 Elliott on Railroads (2d Ed.), sec. 161; 79 S. C. 151; 75 S. C. 286; 82 S. C. (Ga.) 925, 926; 20 R. C. L., p. 11. *As to absence of obligation:* 4 Elliott on Railroads (2d Ed.), p. 471; 60 S. E. (Ga.) 1068. *As to absence of power:* 71 Mass. 182, 252; (N. E.) 4 Pac. 1180; Ann. Cas. 1912c, 86, 89; 10 Am. & Eng. Enc. of Law (2d Ed.) 351; 20 R. C. L., p. 9. *As to absence of proximate cause:* 29 Cyc. 500, 501; (Neb.) 135 N. W. 235; (Wash.) 59 Pac. 495; 44 N. J. L. 247; 22 R. C. L., sec. 19, p. 134; 52 S. C. 336; 109 S. C. 119; (N. C.) 70 S. C. 391; 34 S. C. 451; 94 S. C. 143; 78 S. C. 374; 3 Elliott on Railroads (2d Ed.) 1168; 82 N. Y. 424; 76 Fed. 101; 98 Fed. 520. *Counsel for plaintiff had a perfect right to withdraw his case against the Pullman Company:* 10 S. C. L. 354; 14 Cyc. 411. *In order for the railway company to be indemnified against the Pullman*

*Company it would have to show that it was without fault in causing the injury:* 14 R. C. L., sec. 1, p. 52; 22 Cyc. 99-100; (Ga.) 93 S. E. 170; (N. Y.) 30 Am. St. Rep. 685; 107 Fed. 874; 67 U. S. 418; 17 L. Ed. 298; (Ga.) 71 S. E. 1076; 196 U. S. 217; 49 L. Ed. 453; (Mass.) 41 Am. Rep. 191; 107 Fed. 874; (N. H.) 117 N. E. 1074; 160 N. W. 543; 196 U. S. 217; 40 L. Ed. 453; 22 Cyc. 99. *As to judgment against Brooks and Rhodes being fatal in indemnity against Pullman Company:* 22 Cyc., p. 107; 38 Cyc. 1817, 1818; (Va.) 25 S. E. 232; (N. C.) 45 S. E. 829; (Wis.) 53 L. R. A. 618. *Absence of original liability of Pullman Company fatal to claim indemnity:* 159 Fed. 389; 22 Cyc. 97, and notes; 196 Fed. 885. *Carrier liable for delicts of all whom it allows to perform duties incidental to transportation:* 79 S. C. —; 83 S. C. 454; 102 U. S. 141; 42 Fed. 484; (Ga.) 82 S. E. 925; 62 Fed. 265; 33 L. R. A. 715; 117 U. S. 1, 24, 25; 6 Sup. Ct. Rep. 542, 628; 139 U. S. 79; 11 Sup. Ct. Rep. 394; (Ky.) 19 L. R. A. (N. S.) 753; 84 S. C. 291, and 90 S. C. 358, do not apply to case at bar. *Failure, at the time of the argument, to object to remarks made by the counsel for the Pullman is fatal:* 91 S. C. 139, 144.

January 28, 1919.

The opinion of the Court was delivered by Mr. Justice Fraser.

It will not be necessary to go into the minute details set out in the case.   A general statement is enough in this Court.

The plaintiff, Mrs. Sallie Glass Spigener, lived with her husband near Allendale, in this State.   She formerly lived in Columbia, and Dr. Watson, of Columbia, has been her family physician all of her life.   Mrs. Spigener was in delicate health and was under the care of Dr. Watson.   In the afternoon of the 30th of May, 1916, Mrs. Spigener was taken sick, and, being apprehensive of a serious and dangerous attack, communicated, through her husband, over the

phone, with Dr. Watson in Columbia. Dr. Watson advised that Mrs. Spigener be brought to Columbia immediately. The Southern train from Allendale to Columbia had already left, and plaintiffs found that there was a train on the Seaboard Railway that would pass Fairfax, a station on said road, about 8 o'clock p. m. Fairfax was about 18 miles away. Mr. J. Sims Spigener, one of the plaintiffs, Mr. Bryan, a neighbor of the plaintiffs, Mr. J. Victor Spigener, and a trained nurse went with Mrs. Spigener to Fairfax. The party arrived at Fairfax about 20 minutes before the train. Mr. J. Sims Spigener, the husband of Mrs. Spigener, bought three tickets to Columbia—one for Mrs. Spigener, one for the trained nurse, and one for himself. Mr. Spigener also asked for Pullman tickets for the three. The agent who sold the tickets for the railroad said he did not represent the Pullman Company, but the Pullman Company would sell the Pullman tickets on the train.

It seems that it is the rule at Fairfax for motor and other vehicles to stop on one side of the railroad track, while passengers embark and disembark on the other side. Mr. Spigener asked for, and obtained, permission from the railroad agent to run his automobile near to the passenger side of the railroad track. The reason given for this infraction of the ordinary rule was that the automobile contained a sick lady, and it was very desirable to get the car and its sick occupant as near the coach as practicable. When the train came it stopped, before it reached the station, at a water tank, and then moved up to the station; the Pullman, however, being some distance from the station. The agent of the railroad checked the plaintiffs' trunk to Columbia. The plaintiffs had two suit cases, containing articles that would be necessary in the emergency. When the train stopped at the station, Mr. Spigener asked a train official about the Pullman. He was told that the Pullman was closed. Mr. Victor Spigener took the two suit cases and went back to the

Pullman, which he found open, and put the suit cases on the Pullman. The train started, and the Pullman conductor told Mr. Victor Spigener to get on the Pullman, as the train was probably pulling the cars up further to the station. Finding, however, that the train was not going to stop, Mr. Spigener got off of the train. When the train arrived at the station, the agent, the defendant, Brooks, went to the baggage car to superintend the taking off and putting on of the trunks. There is evidence that, when the flagman gave the signal to start the train, he was told that there was a sick lady to go on the train, and that the flagman or brakeman told the train conductor. The Pullman conductor promptly went forward to find the train conductor to inquire about his passengers. He found him and asked for his passengers. The train conductor told the Pullman conductor that there were no Pullman passengers. The Pullman conductor then told him of the two suit cases. There was evidence that the train was then in a "stone's throw" of the Fairfax station. The train conductor, the defendant, Rhodes, replied, "If we have left any one, we will hear from it at Denmark." Denmark was an hour's ride away; two hours running backwards or a delay of three hours. There is testimony that Mrs. Spigener suffered great nervous shock when she found that she had been left, and continued to suffer intense bodily pain until she got to Columbia the next morning. Complaint was at once made to the station agent, who took up the matter with the head officials of the road. The only concession that was made was that, if the train could be stopped before it reached Denmark, it would go back to Fairfax for Mrs. Spigener. There is evidence that Mrs. Spigener lost an infant child by premature birth by reason of the delay, and that she received by reason of her sufferings serious injury to her physical and nervous constitution, which would be, in all probability, permanent. There was evidence that the defendant could, at small cost, have sent out an extra engine and coach from Savannah that would

have taken Mrs. Spigener to Columbia, with only a rea
sonable delay. Nothing was done to relieve the situa
tion, and Mrs. Spigener was required to go to a hotel and
wait for the next train. This delayed her about six or seven
hours.

This suit was brought against the railway, the station
agent, the train conductor, and the Pullman Company.

At the close of the testimony, the defendant, the Pullman
Company, moved for a direction of a verdict in its behalf.
The plaintiffs consented, and the other defendants stated,
"We are not interested in the motion," but stated that their
position was that, because of notices given to the Pullman
employees, it was claimed as one of the acts of negligence
for which the Seaboard Air Line Railway was responsible to
plaintiffs and the Seaboard Air Line Railway might be enti-
tled to have the Pullman Company answer over to it.

The verdict was $20,000 for actual damages and $5,000
punitive damages against the Seaboard Air Line Railway
Company, and $1,250 for punitive damages each against the
defendant, Brooks and Rhodes.

From the judgment entered on this verdict, the three
defendants appealed. Subsequently the defendants, Brooks
and Rhodes, moved to be allowed to abandon their appeals,
This motion is granted.

There are 17 exceptions by the railway company, but in
argument they have been reduced to 7. They will be con-
sidered as they are stated in the argument.

Point 1: "That it was error, after the testimony had been
introduced as to the notice given through the employees of
the Pullman Company and the arguments had
thereon, to dismiss the Pullman Company from the
suit and leave the jury to find a verdict for damages
against the Seaboard Air Line Railway on account of such
notice."

This cannot be sustained. The plaintiffs relied upon
notice given to the station agent, the flagman, the railway

conductor, while standing between the coaches, and the notice given to the railway conductor by the Pullman conductor, in the thoroughfare coach. It was the actual notice given to the railway conductor, and not the imputed notice to the Pullman conductor.

2. Point 2: "That the notice given to the ticket agent of the sickness of the plaintiff, Mrs. Spigener, was not of such a character as to require assistance at his hands."

This cannot be sustained. It may be that the notice did not require manual assistance in getting on the train, but the rule required the conductor to obey the orders of agents or yardmasters while at stations. The station agent could have rendered valuable assistance in requiring the conductor to stop long enough and at a suitable place to enable the sick lady to entrain. It was for the jury to say what kind of assistance was necessary under the circumstances. A mere notice to the railway conductor that there was a sick lady at the station to get on the train might have been very valuable assistance. The record shows that, when the train arrived at the station, the station agent did not tell any official on the train that there was a sick lady there to take the train. The issue was real and properly submitted to the jury.

3. Point 3: "That it was not the duty of the conductor, under the circumstances proven, to run the train back to Fairfax, after it had left the station, to take up the plaintiff, Mrs. Spigener."

This point cannot be sustained. There was evidence that the conductor knew he had left a passenger while he was within "a stone's throw of the station," and there was no evidence that the conductor would have violated any rule by going back. His Honor told the jury that it was sometimes improper to go back. The facts were before the jury, and it was a question for them.

4. Point 4: "Our fifth, sixth, seventh, fifteenth, sixteenth and seventeenth exceptions all make the point that it was error for his Honor, the Circuit Judge, to instruct the jury that they might find a verdict for actual damages against the railway company without finding a verdict for the same amount, or any part thereof, against the servants of the company, parties to the cause before the Court, for whose conduct the railway company is held liable, and also that in finding for punitive damages they might find a larger amount against the railway company than against its servants who caused the injury."

Where a servant is united with the master in an action for damages for tort, and the allegation and proof shows that the tort complained of was the tort of this servant alone, then a verdict against the master alone cannot stand, because, if this servant did not commit the tort complained of, then there was no tort, and a verdict against the master alone cannot stand. If, however, other servants are involved, the jury may find that the tort was committed by other servants and find against the master alone, and a verdict against the master alone can stand.

There was evidence that the flagman, who gave the signal to proceed, was told that there was a sick lady to go on that train. There was also evidence that those in charge of the transportation at the head office were notified, and they gave no assistance and held out no effective hope of relief. A larger amount was given against the railway than against the station master and the railway conductor. The latter had only a few minutes consideration to determine what to do. The former had ample time, and the only relief they offered was the one they must have known would prove ineffectual. The transportation department had ample opportunity to learn the exact status and the danger of a delay, yet did nothing to relieve the situation. The jury might have concluded that injury to the plaintiff might have

been temporary only, if relief had been given within a reasonable time, but that the long delay produced the injury that, according to some of the testimony, proved to be permanent.    It is one spirit that does a wrong and another to refuse to make reasonable effort to avoid the consequences of the wrong already done.

The difference in the amount of the verdicts is not legal ground to set them aside.

5. Point 5: "That on the motion for a new trial his Honor, the presiding Judge, should have held that there was no notice brought home to the railroad company before the train had left Fairfax that the plaintiff, Mrs Spigener, was suffering from any special or peculiar condition; and that there was no evidence of any damages suffered from other cause except from her special and peculiar condition, and, therefore, the verdict should have been set aside."

There was evidence that they had notice enough after the train left, and while they might still have given relief, and did not do so.

6. Point 6: "That there was no evidence of wilfulness, wantonness, recklessness, or gross negligence on the part of the agents and servants of the Seaboard Air Line Railway, and that the verdict for $5,000 punitive damages should have been set aside, and was, moreover, excessive."

The amount of the verdict was a question for the Circuit Judge.    Enough has been said to show that there was abundant evidence of a wilful tort.

7. Point 7: "Because, upon the motion for a new trial, his Honor, the Circuit Judge, should have held that the counsel for the Pullman Company so addressed the jury as to unfairly prejudice them against the Seaboard Air Line Railway, and should have set aside the verdict for that reason."

There was no objection made at the hearing, and it was too late afterwards.

The judgment is affirmed.

MESSRS. JUSTICES HYDRICK and GAGE concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS did not sit.