14947

HUBBARD v. ROWE *ET AL.*

(5 S. E. (2d), 187)

De-cember, 1937.

*Messrs. Neville Bennett, Herbert & Dial* and *Benet, Shand & McGowan,* for appellant,

*Messrs. Tison & Miller, N. W. Edens* and *G. W. Free-man, Jr.,* for respondent,

October 23, 1939.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

This action was brought in March, 1933, against the defendants, Standard Oil Company of New Jersey, a corporation, and E. W. Rowe, for damages in the sum of $250,000.00, on account of physical injuries claimed to have been received by plaintiff in the handling and dispensing of gasoline and tetraethyl lead gasoline.

The complaint alleged, among other things, that the oil company owned a filling station in the Town of Bennettsville, South Carolina, and that Rowe at all of the times mentioned was in the employ of his co-defendant, and that the things claimed to have been done by him were done in the course of such employment; that at this filling station the defendants sold the products of the oil company, including tetraethyl lead gasoline under the name of "Esso," which "is a highly poisonous compound, and is readily absorbed by the tissues of the body and pores of the skin"; and that the poison, which is also conveyed into the system by the inhalation of the vapors from such gasoline, "insidiously attacks the human body, causing dulled perception, sluggishness, insanity and blindness," etc., some persons being more susceptible than others to the ravages and poisonous effects of this compound. It was further alleged that the plaintiff, then only seventeen years of age, was employed by Rowe about or during the summer of 1929 "as a wage earner of the defendants to help off and on about the said

filling station"; that the machine or appliance from which was dispensed tetraethyl gasoline was unsafe and defective, which condition was well known to the defendants, and to each of them; but despite this fact, such appliance was continued in use, and "was the only method by which the said poisonous compound was dispensed"; that on or about August 26, 1929, while plaintiff was discharging his duties in and about the filling station and was dispensing tetraethyl lead gasoline from this unsafe and defective appliance, a large quantity of such gasoline escaped from the glass container and gushed through the hose into plaintiff's face, eyes and ears, and was absorbed by the tissues of his body and the pores of the skin, "poisoning and burning his eyes and poisoning his system"; and that by reason thereof he is now totally blind in one eye, and that the other eye is "progressively deteriorating to such an extent that he will surely lose the use of it and will be totally blind."

It was claimed, and so alleged, that the defendant, Standard Oil Company of New Jersey, was negligent, willful, reckless and wanton in the following specific particulars, the defendant Rowe, except as to (5), being charged with the same acts of negligence and willfulness:

"(1) With full knowledge of the dangers incident to the handling of gasoline and tetraethyl gasoline, it failed in its duty to warn plaintiff, a minor, of these dangers.

"(2) With full knowledge as aforesaid of the dangers incident to the handling of gasoline and tetraethyl gasoline, it failed to advise the plaintiff, a minor, of proper protective measures thereabout.

"(3) It failed to provide plaintiff a reasonably safe place to work in that:

"a. It permitted and required him to dispense tetraethyl lead gasoline from a hose not equipped with a cut-off at the nozzle.

"b. It permitted and required plaintiff, a minor, to dispense tetraethyl lead gasoline from a defective appliance

equipped with one cut-off only, and that at the base of the glass reservoir.

"(4) It caused and required plaintiff to work in soiled and dirty clothing saturated with a poisonous compound.

"(5) It failed to provide plaintiff with a reasonably safe and proper appliance; and caused the plaintiff to work about a defective and unsafe appliance."

By their separate answers, the defendants denied the material allegations of the complaint and pleaded the additional defense of contributory negligence and assumption of risk. The Standard Oil Company also set up the defenses that it had rented to its co-defendant, E. W. Rowe, on a commission basis, a filling station which it owned in the Town of Bennettsville; that under the contract between them, Rowe "was to provide any and all necessary service and was to employ at his own expense and under his own supervision and direction any and all salesmen, laborers and other help necessary in order to operate the said filling station"; and that any employment of the plaintiff by Rowe to work at the filling station was a matter with which the defendant company had no connection and over which it exercised no control.

The case was first tried in June, 1935, and the jury failing to agree, a mistrial was ordered. On the second trial, in December, 1937, a verdict for actual damages in the sum of $60,000.00 was rendered against the Standard Oil Company alone—there was no finding against Rowe—and from judgment entered this appeal is taken by that defendant.

This case, which is one of much interest, was argued at the bar of the Court with earnestness and ability. There are thirty-one exceptions, but counsel for the appellant have reduced the questions for decision to sixteen, all of which we think are fairly presented by the appeal. Before beginning our consideration of them, however, we will dispose of the following contention of the respondent: "The rule that in order to carry to this Court objections to rulings made

in the course of the trial, such objections must first be presented to the trial Court on a motion for a new trial, and that the stated grounds of such a motion delimit the questions that may be raised on appeal (as to matters occurring during the trial) has been frequently declared by this Court. The application of that rule to the present case eliminates twenty-six of the exceptions (including subdivisions) in this case."

In matters of appeal, so far as it appears, all that this Court has ever required is that the questions presented for its decision must first have been fairly and properly raised in the lower Court and passed upon by that Court. Of course, as to questions specifically affecting the verdict, or other questions not specifically ruled on, the Court below must of necessity be given an opportunity on motion for a new trial of passing upon and correcting such matters before they can or will be reviewed by this Court on appeal. The decided cases relied on by the respondent go no further than that.

In *Detheridge v. Earle*, 3 S. C., 396, cited by appellant, syllabus 2, which correctly states the holding of the Court, reads as follows: "For error of law, a new trial may be granted on appeal from the judgment, though no motion for a new trial was made before the Circuit Judge."

In *Brice v. Hamilton*, 12 S. C., 32, decided in 1879, where a similar question was considered, the Court said: "A general objection is made by the defendants to the effect that no application was made to the Circuit judge for a new trial, but the appeal is directly from the judgment, and, therefore, as they contend, the exceptions taken at the trial cannot be heard. There is no ground for such an objection. It was competent for the plaintiffs to have moved before the Circuit Court for a new trial, but as the objections to the verdict relate to matters of law alone, and could be heard in this court, the appellants were not bound to submit them to the Circuit judge, on a motion for a new trial, before ap-

pealing to this court. There is no provision of the code exacting any such condition to an appeal to this court, and no antecedent practice from which such a rule could be inferred. An appeal from a judgment involves any intermediate order involving the merits and necessarily affecting the judgment (Code, § 11), and this includes all rulings and charges material to the judgment."

The rule as thus stated in the *Brice case* has never been changed, either by statute or otherwise, as far as the cited decisions disclose. The claim of the respondent, therefore, is held to be without merit.

At the close of all the testimony, counsel for the Standard Oil Company (hereinafter referred to as the company or the appellant) moved for a directed verdict, one of the grounds of the motion being that plaintiff's action was based on the relationship of master and servant and that the evidence failed to show that Hubbard was ever employed by or was ever an employee of the appellant. The trial Judge ruled as follows: "Assuming the duty that I have of construing this contract in accordance with its terms and the evidence submitted in the case, I am going to hold that the relationship of master and servant did not exist between Hubbard and the Standard Oil Company of New Jersey, but that the evidence considered in connection with the contract made a relationship of principal and agent, the special characteristics of which it is not necessary to decide at this time." He further held, however, that the facts disclosed by the evidence imposed upon the company a duty to Rowe and his employees respecting the equipment furnished for the dispensing of the company's products, and that this duty included the furnishing of reasonably safe appliances and equipment with which to do this work at the filling station; and whether this was done or not was a question for the jury under the testimony. He accordingly ruled out, as to the appellant, specifications of negligence (1) and (2), and instructed the jury that the company owed Hubbard "no special duty, such as will arise from the relationship of

master and servant, but merely a general duty of exercising due care toward Mr. Rowe and his employees in and about that station and in connection with the sale and dispensing of their products."

The appellant, by certain of its exceptions, imputes error to the presiding Judge (1) in refusing to direct a verdict on the ground named, "when he held that the relationship of master and servant was not shown "; and (2) "in charging the jury that a different relationship existed from that alleged."

The relationship of Rowe to the company, as already indicated, grew out of a written contract between them, which was put in evidence. It provided that Rowe, as the agent of the company, designated as the principal, was appointed by the latter to sell its products, and only such as were delivered to him at the company's service station in Bennettsville, at prices and upon terms to be fixed by the principal from time to time; that all funds from the sale of such products belonged to the company, and were to be remitted to it by Rowe daily, accompanied by a sales statement, no sales to be made on credit except by permission of the principal in writing, the company to pay Rowe commissions on sales as provided for in the contract; that the company was to furnish "such equipment and supplies as may be necessary for the proper handling" of its products, and a manual prescribing rules and regulations to be followed in the service rendered in connection with the sale of such products; that Rowe should employ, at his own expense, salesmen and other help as might be necessary to render adequate service to the public at the filling station, all such persons employed by him to be his and not the company's employees, the principal to be paid a reasonable price for the uniforms to be worn by Rowe and his salesmen as required under the provisions of the manual. The contract also contained a provision that the company should have access to the station at all times "for the purpose of inspecting its equipment and

products, the character of service rendered by Agent in the sale of such products, the general appearance of the station and for taking an inventory."

There was evidence to the effect that the company first owned the filling station where the business was conducted, and furnished and maintained the equipment and appliances for carrying on the business. Also, that the respondent, as a hired helper in the dispensing of its products at the station, was required to perform his duties as directed by Rowe and by the agents of the company through whom Rowe got his orders relating to the operation of the business—that is to say, the matter of how the employees should work, dress, etc., was limited and controlled by the rules and regulations furnished by the company. It was testified that representatives of the appellant visited the station at different times and gave orders to the employees with regard to the conduct of the business; and that the unsafe and defective condition of the pump from which tetraethyl lead gasoline was dispensed was known to the company, but nothing was ever done by it to correct such condition. While the testimony was in conflict in some respects in regard to these matters, there was evidence which tended to show and establish the facts as here stated.

As to the above assignments of error, counsel for the appellant urge that the company, under the ruling of the Court, "owed to the plaintiff none of the duties alleged in the complaint and that there could, therefore, exist none of the delicts charged against appellant. Since he had failed to establish the fundamental basis on which his suit rested, it must follow as an inevitable conclusion that as to the defendant, Standard Oil Company, a verdict should have been directed." Counsel for the respondent contend that the primary fallacy of this position of the appellant is the assumption that the complaint was founded solely on the doctrine of master and servant as relating to the relationship between the company and the respondent.

It must be conceded, under our liberal system of pleading, that the appellant cannot stand on a· technical interpretation of the complaint as controlling the character of the cause of action therein stated; and whether the relationship between the company and Hubbard was one of master and servant, or of principal and agent, or of some other kind, a cause of action is stated and proved if the facts alleged and proved show liability on the part of the company to the plaintiff upon any sound legal theory embraced within the scope of the complaint. But it is also true that if the company may be held liable for injuries resulting from the use of defective equipment supplied and serviced by it (a) to an employee actually employed by it, or (b) to an employee of one of its agents who use such equipment, or (c) to any member of the public injured by reason of the defects in the equipment, in order to properly prepare and present its defense or defenses, it has the legal right to know upon which of these relationships the plaintiff's action is based.

In the case at bar, as is seen, the matter was left in doubt as to just what relationship, under the Court's ruling, existed between Hubbard and the company; that is to say, upon what sound legal theory embraced within the scope of the complaint the company's liability was predicated. While it is true, in passing upon the motion, the trial Judge held "that the evidence considered in ·connection with the contract made a relationship of principal and agent, the special characteristics of which it is not necessary to decide at this time," it does not appear that the "characteristics" of the suggested relationship were ever clearly defined in the further progress of the case, the jury being merely instructed that the company owed Hubbard a general duty of exercising due care toward Rowe and his employees in and about the station in connection with the sale and dispensing of the products. In fact, the trial Judge himself stated that there was "a dark area there between the master and servant relationship and

the third person relationship." In this situation, it is undoubtedly true that the jury were confused as to the real legal issues involved, and with regard to which, under the facts as disclosed by the evidence, they were asked to render a true verdict.

While we are satisfied that the foregoing conclusion is correct, a prolonged and painstaking consideration of these assignments of error convinces us, and we so hold, that the motion for a directed verdict was correctly refused. This is not a case, as is seen from an examination of the record, where the facts provided had the effect of leaving the facts alleged in the pleadings unproved in "their entire scope and meaning." As the case must be remanded for a new trial, the respondent will be permitted to amend his complaint if he be so advised. The contention of Hubbard that the trial Judge erred in holding that the relationship of master and servant did not exist between him and the company, cannot be considered by this Court for the reason that that question is not properly before us, there being no exception taken to such ruling of the Court below.

The seventh question, which we will now consider is as follows: "Did the presiding Judge commit error in failing to properly protect the defendant from inflammatory statements made by counsel for plaintiff in the argument to the jury when timely and proper objections were made to such statements?"

The principles applicable and controlling in a matter of this kind are stated and fully considered in the following decisions, making a further discussion of them here unnecessary: *Kirby v. Western Union Telegraph Co.,* 77 S. C., 404, 58 S. E., 10, 122 Am. St. Rep., 580; *Crosby v. Railway Co.,* 81 S. C., 24, 61 S. E., 1064; *Faris v. Telegraph Co.,* 84 S. C., 102, 65 S. E., 1017; *Bunch v. Charleston & W. C. Railway Co.,* 91 S. C., 139, 74 S. E., 363; *Crawford v. Rice & Hutchins Baltimore Co.,* 98 S. C., 121, 82 S. E., 273; *Spigener v. Seaboard Air Line Railway Co.,* 111 S. C.,

405, 98 S. E., 330; *Jackson v. Enola Ginning Co.,* 139 S. C., 513, 138 S. E., 289; *White v. Southern Railway Co,* 142 S. C., 284, 140 S. E., 560, 57 A. L. R., 634; *McLane v. Life Insurance Co.,* 154 S. C., 366, 151 S. E., 608; *State v. Meehan,* 160 S. C., 111, 158 S. E., 151; *Edwards v. Union Buffalo Mills Co.,* 162 S. C., 17, 159 S. E., 818; *Price v. American Agricultural Chemical Co.,* 178 S. C., 217, 182 S. E., 637; *Major v. Alverson,* 183 S. C., 123, 190 S. E., 449.

It is conceded that on several occasions during their argument to the jury, counsel for the plaintiff made statements that were immediately objected to by counsel for the company as being highly improper and prejudicial to the appellant. These remarks, as stated in the record, were in substance as follows: That the amount the plaintiff was asking for by way of compensation to be paid him by the oil company, would not be more than a nickel to that company; that it was a bad thing for a big company to take a boy like that and blind him and then come into Court and pay for it in pocket change (this argument was made in the face of the Court's holding that Hubbard was not an employee of the company); and that it was the same proposition as that of a railroad company that could kill people at crossings cheaper than they could put in an overhead bridge. Objection was also made to another somewhat similar remark. Counsel for the appellant contended that these statements had the effect of arousing the sympathy of the jury and of prejudicing them against large corporations, thus depriving the company, in the circumstances, of a fair and impartial trial. The presiding Judge, while refusing to order a mistrial, directed plaintiff's attorneys to confine their arguments to the record, holding, however, that they had a right to make statements that they thought were proper by way of analogy.

The appellant again raised the question after the verdict for $60,000.00 had been rendered, its motion for a new trial being make upon the following grounds, among others:

"That the arguments of plaintiff's attorneys were not proper, were not based on the testimony in the case, and were such as to create prejudice against the defendants and sympathy in favor of the plaintiff, and to make it impossible for the jury to render a fair and impartial verdict; and the amount of the verdict rendered shows in itself that the jury, being swayed thereby, were unable to do justice between the parties, and, on the contrary, based its verdict on passion, prejudice and sympathy.

"That his Honor, the trial Judge, failed to properly protect the rights of defendant Standard Oil Company of New Jersey against the improper arguments of plaintiff's attorneys, in that when counsel for the said defendant called attention during the arguments to improper statements being made, that the trial Judge ruled in such a manner as to create the impression on the jury that the objections of the defendant's counsel were not well taken, and that the tremendous and unjustified verdict shows that this failure, in conjunction with other errors, served to inflame the prejudice of the jury and to prevent the defendant Standard Oil Company of New Jersey from having a fair trial."

The trial Judge, in rejecting these grounds of the motion, stated that on each occasion complained of, "when I deemed the argument improper, I instructed offending counsel to confine his remarks to the record and thereupon such counsel promptly desisted." He also called attention to the fact that in charging the jury he told them "that in the arguments of counsel, where an objection by one or the other of counsel in this case was made and the Court ruled that the argument of one counsel or the other was beyond the scope of proper argument, so far as the record in this case was concerned, the Court then intended to say and does say now that you gentlemen of the jury are not concerned in your determination of this case with any line of argument or suggestion made to you by any counsel in the case which the

Court has ruled incompetent and not within the range of proper argument."

The exceptions raising this question are in effect the same as the grounds of the motion stated above. It is contended that the trial Judge erred in failing to rule upon appellant's objections that the arguments complained of were highly unfair and prejudicial to the defendant company, in failing to properly instruct counsel to desist from such arguments, in failing to protect the defendants by instructing the jury to disregard the specific remarks of counsel objected to, and in denying the appellant's motion that the Court, for the reasons stated, order a mistrial.

We have read and carefully considered the objectionable remarks attributed to counsel for the plaintiff in their argument to the jury, and which are not denied. We think that some of the statements made were clearly improper, and tended to prejudice the rights of the appellant. It is true that the trial Judge directed plaintiff's attorneys to confine their remarks to the record, and charged the jury generally that they should disregard any statements of counsel which were beyond the scope of proper argument and which the Court had ruled incompetent. However, we are of opinion that the action taken by him did not cure the harm done. We think that he should have specifically ruled upon appellant's objections, and further and more fully instructed counsel for plaintiff to desist from making improper remarks, and to have charged the jury to disregard in reaching their verdict the particular objectionable statements made.

It appears that the plaintiff in this case is a deserving young man, highly thought of in his community. It is generally known that the defendant company is a large corporation and that it is said to be very wealthy. It was charged by Hubbard that this company had destroyed his eyesight in part, or perhaps entirely, by its negligent and careless acts alleged and testified to by him. Naturally,

then, this was a case where sympathy for the plaintiff could be easily aroused, and strong feeling incited against the company for having carelessly blinded the respondent, as was claimed by him, a young man with most of life ahead of him. And this is undoubtedly what happened when the company was held up to the jury in argument of counsel as caring less for human suffering than for the saving of money, etc. We have no doubt that the jury was greatly influenced by such argument—to the extent even of affecting the amount awarded, as a jury cannot exercise, when so influenced, an unbiased judgment as to the merits of the case, so essential to a fair and impartial trial. We are convinced, upon full consideration of the matter, that there is substantial merit in this assignment of error. The exceptions raising this question, therefore, are sustained.

We will now consider the eighth question for decision: "Did his Honor, the trial Judge, commit error in refusing to order a mistrial based upon the misconduct of the juror, Swett?"

It appears from the record that during the trial of the cause, on the night of December 7th, it came to the attention of appellant's counsel that one of the jurors, Tom Swett, who was serving on the jury in the case, had made certain statements on Monday morning when he was a member of the venire, but before the jury had been drawn, with reference to what amount he though Hubbard should recover. Having procured affidavits to that effect, counsel for the company took the matter up with the presiding Judge on the morning of December 8th at the Judge's chambers, attorneys for the plaintiff being present. The affidavit of one Pharoah Jacobs was submitted at the hearing, in which he stated:

"I was standing in front of the Court house last Monday morning, December 6. I was talking with Nathan Walters and Tom Swett. The Hubbard case came up. Walters asked how much the Hubbard boy was suing for. I said I

thought it was two hundred and fifty thousand dollars. Tom Swett spoke up and said: 'Well, I think the boy ought to get one hundred and fifty thousand dollars.'

"I said then that if he was blind he couldn't tell a dollar bill from a ten dollar bill. Then Tom Swett said that if he got the money he could hire somebody else to take care of him the rest of his life.

"At the time of this conversation I did not know that either of these men, except Nathan Walters, was on the jury list."

The affidavit of Nathan Walters, who was present at the time that Swett made that alleged statement, was also presented: "I was summoned as a juror at the present term of Court of Common Pleas for Marlboro County. Monday morning before Court, I was in front of the Court house and was talking with Pharoah Jacobs and Tom Swett. Something was said about the case of Hubbard against the Standard Oil Company and someone asked how much Hubbard was suing for and Pharoah Jacobs said he understood they were suing for two hundred and fifty thousand dollars, and then Tom Swett, who is also a juror, said that he thought that they ought to give Hubbard one hundred and fifty thousand dollars and I laughingly remarked that it wouldn't do him any good if he were blind; that he wouldn't know a one dollar bill from a one hundred dollar bill, and Swett remarked that if he could get the money he could get somebody to take care of him."

Counsel for the company, after stating that they had called the matter, which was a serious one to their client, to the attention of the presiding Judge as quickly as they could after being informed thereabout, moved, inasmuch as Swett was a member of the jury trying the case, that a mistrial be ordered. After some discussion, the Court ruled as follows: "These affidavits do not show an attempt to influence the juror. It was a matter of opinion which may have been only facetiously expressed. I hesitate to order a mistrial in

a case which has been tried once; so, in the absence of a stronger showing, something beyond a mere expression of opinion, I will not order a mistrial. I don't think that is sufficient upon which to order a mistrial."

While it appears that the situation was an unusual one, counsel citing no decided case in point, it was a serious matter, vitally affecting the issue of whether or not the defendant company would or could receive, in the circumstances, a fair and impartial trial. It has been held that the misconduct of a juror, although amounting to no more than the juror's accepting entertainment from the litigants or their counsel, is a proper ground for a mistrial. While the situation here was somewhat different, it was a matter that required a full investigation on the part of the presiding Judge. The juror in question was charged in the affidavits with having stated positively that he thought the plaintiff should have a verdict for $150,000.00, giving as his reason that if Hubbard were awarded the money he could get somebody to take care of him. We do not think it is material whether Swett expressed such an opinion before or after he was drawn on the trial jury. The question is whether he made such a statement; and, if so, could he offer a satisfactory excuse for doing so? However, he was not questioned or given an opportunity to deny the grave charge made against him, or to offer any explanation thereabout. It was not ascertained whether the statement, if made, was made inadvertently, or whether it was intended to be a jocular remark or the deliberate and fixed opinion of the juror. Presumably, on the face of the affidavits, Swett was prejudiced against the defendant company and was, therefore, not a competent juror. In these circumstances, it is clear that the appellant was entitled to the protection of the Court to the extent of its ascertaining the true facts of the matter; for only in that way could the trial Judge properly determine, in the exercise of a wise discretion, whether the juror was a competent one or whether a mistrial should

be ordered. As the Court failed to take the action indicated, we are constrained to hold that there was reversible error as complained of.

In view of the conclusion reached, that there must be a new trial for the reasons stated above, we deem it unnecessary to discuss the other questions presented by the appeal. Moreover, we may reasonably assume that some of these questions, and perhaps most of them, will not arise when the case is tried again.

The judgment of the Court is:

(1) That the judgment of the Circuit Court be, and hereby is, reversed and the case remanded to that Court for a new trial.

(2) That the plaintiff have leave to amend his complaint, if he be so advised, within twenty days after the filing of the remittitur herein with the Clerk of the Court for Marlboro County.

(3) That the defendant company have twenty days after service upon it of the amended complaint to answer same, or otherwise plead thereto.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL, concur.

MR. JUSTICE CARTER did not participate on account of illness.