527 S.E.2d 395

**The STATE, Respondent,**

v.

**Daniel Lee TAYLOR, Appellant.**

**No. 3111.**

Court of Appeals of South Carolina.

Submitted Dec. 7, 1999.

Decided Feb. 7, 2000.

Assistant Appellate Defender M. Anne Pearce, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Caroline Callison Tiffin, all of Columbia, and Solicitor Randolph Murdaugh, III, of Hampton, for respondent.

CONNOR, Judge:

The trial court convicted Daniel Lee Taylor of driving under suspension, second offense. Taylor appeals, arguing his conviction is invalid as a matter of law because the term of his suspension expired before the date of his arrest. We affirm.

## FACTS/PROCEDURAL HISTORY

In 1996, Daniel Lee Taylor was charged with and convicted of driving under suspension (DUS). As a result, his license was suspended. The suspension period ended November 1, 1996. It is undisputed that Taylor never complied with the statutory requirements for reinstating his suspended license. In January of 1998, Taylor was stopped and arrested for

driving on the wrong side of the road. A Beaufort County grand jury indicted him for DUS.

At a bench trial, Taylor stipulated to the facts. The only matter the judge had to decide, therefore, was Taylor's claim that, because his license suspension expired in November 1996, he could not, as a matter of law, be convicted of DUS in 1998. The trial court found Taylor guilty of DUS, second offense, and sentenced him to sixty days imprisonment and a $500 fine, suspended on fifty-nine days or a $350 fine and two years probation. This appeal followed.

## LAW/ANALYSIS

The sole question presented for our consideration is whether the running of a definite term of suspension precludes a conviction for DUS as a matter of law.[1] Taylor contends the expiration of his suspension period effectively operated to "revoke" his driver's license, because by statute he was required to "renew" his license before driving again. As he admittedly failed to comply with the statutory requirements, asserts Taylor, he actually did not possess a license at the time of the arrest and therefore could not be convicted of DUS.

One statute at issue provides in relevant part:

*[I]n all cases where the Department [of Public Safety] suspends or revokes the driver's license of any person under lawful authority possessed by the Department,* except in those cases provided for in § 56–1–270, in which case the license only shall be suspended and not the registration, the Department shall also suspend the registration for all motor vehicles registered in the name of that person.... *The license and registration shall remain suspended* or revoked and shall not at any time thereafter be renewed nor shall

---

1. As an initial matter, the State claims this issue is not preserved for appellate review because Taylor failed to move for a directed verdict at trial. The record on appeal clearly demonstrates this issue was the only one argued to and ruled upon by the trial court. Indeed, it was the very reason for the "stipulated fact bench trial." *See Hubbard v. Rowe,* 192 S.C. 12, 19, 5 S.E.2d 187, 189 (1939) ("[A]ll that this Court has ever required is that the questions presented for its decision must first have been fairly and properly raised in the lower Court and passed upon by that Court.").

any license be thereafter issued to that person ... until permitted under the motor vehicle laws of this State and not then *until he shall give and thereafter maintain proof of financial responsibility.*

S.C.Code Ann. § 56–9–500 (1991) (emphasis added). Accordingly, by the clear, express terms of the statute, once Taylor's license was suspended lawfully, it remained suspended in the absence of proof of financial responsibility. *See Bumgardner v. South Carolina Dep't of Highways & Pub. Transp.,* 286 S.C. 46, 331 S.E.2d 787 (Ct.App.1985) (on completion of DUS suspension period, § 56–9–500 requires submission of proof of financial responsibility before *reinstating* driver's license) (emphasis added).

Taylor, however, argues that because his definite period of suspension expired on November 1, 1996, his failure to conform to the statutory mandates of §§ 56–1–400 and 56–9–500 caused his license to expire with it. Therefore, although he may have been driving without a license, he was not driving under suspension. In support of this argument, Taylor relies on § 56–1–400, which states in pertinent part:

The department, upon suspending or revoking a license, shall require that such license shall be surrendered to the department. *At the end of the period of suspension,* other than suspension for reckless driving, driving under the influence of intoxicants or pursuant to the point system *such license so surrendered shall be returned to the licensee, or in the discretion of the department, a new license issued to him.* The department shall not **return** nor **restore** a license which has been suspended for reckless driving, driving under the influence of intoxicants, or for violations under the point system until the person has filed an application for a new license, submitted to an examination as upon an original application, and has satisfied the department, after an investigation of the character, habits, and driving ability of the person, that it would be safe to grant him the privilege of driving a motor vehicle on the public highways.

S.C.Code Ann. § 56–1–400 (Supp.1998) (emphasis added). By requiring a new application and "examination as upon an original application," argues Taylor, the statute makes the de facto assumption that a person whose license was suspended for one of the three offenses named therein did not have a

license at all and therefore was required to apply for a "new" one.

However, this interpretation not only conflicts directly with § 56-9-500, it ignores the very language of the statute it claims as support. As stated above, § 56-1-400 provides that the Department of Public Safety shall not *return* or *restore* a license suspended for any of these three offenses. Obviously, there has to be an extant license for the Department to return or restore. *See City of Columbia v. American Civil Liberties Union of S.C., Inc.*, 323 S.C. 384, 475 S.E.2d 747 (1996) (where language of statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion to employ rules of statutory interpretation and court must apply terms according to their literal meaning); *City of Camden v. Brassell*, 326 S.C. 556, 486 S.E.2d 492 (Ct.App.1997) (where the legislature elects not to define a statutory term, court will interpret it in accord with its usual and customary meaning).

Moreover, such a reading misapprehends the rationale behind a definite term of suspension. The statute envisions that at the end of a period of suspension, a person may reacquire his driving privilege, either by having his license returned or reissued automatically under § 56-1-400, or by having it restored by complying with the statutory provisions of §§ 56-1-400 and 56-9-500. Additionally, consistent with the procedures outlined above, § 56-1-390(1) provides, "Whenever the department suspends or revokes the license of a person under its lawful authority, *the license remains suspended* or revoked and must not be reinstated or renewed nor may another license be issued to that person *until he also remits to the department a reinstatement fee....*" S.C.Code Ann. § 56-1-390(1) (Supp.1998) (emphasis added). When these statutory provisions are read together, it is clear the legislature intended that once a license is suspended, it remains suspended until these requirements have been met.

For the foregoing reasons, Taylor's conviction for driving under suspension is

**AFFIRMED.**

ANDERSON and STILWELL, JJ., concur.