JOHN HALUPTZOK vs. GREAT NORTHERN RAILWAY CO.

Argued Nov. 28, 1893.  Affirmed Dec. 7, 1893.

No. 8424.

**Master liable for acts of his servant.**

> If a servant who is employed to perform certain work for his master procures another person to assist him, the master is liable for the negligence of the latter, only when the servant had authority to employ such assistant.

**Authority of a servant to employ others may be implied.**

> But this authority may be implied from the nature of the work to be performed, or from the general course of conducting the business of the master by the servant; and it is not necessary that there should be an express employment of the person in behalf of the master, or that compensation be paid or expected.  It is enough to render the master liable if the person guilty of the negligence was at the time in fact rendering service for him by his consent, express or implied.

Appeal by defendant, Great Northern Railway Company, from an order of the District Court of Wright County, *Thomas Canty,* J., made April 15, 1893, denying its motion for a new trial.

On the afternoon of July 18, 1892, Alfonzo Haluptzok, eight year old, son of plaintiff, John Haluptzok, was on the platform of the railway depot of defendant in Waverly in Wright County. While there his left foot was seriously injured by being run over by one of the wheels of a baggage truck loaded with freight.  The truck was at the time being handled by James O'Connel, a young man learning telegraphy there, under the circumstances stated in the opinion.

The father brought this action in behalf of his son, as provided by 1878 G. S. ch. 66, § 34, and obtained a verdict for $300.  Defendant moved for a new trial.  Being denied, it appeals.

*W. E. Dodge* and *Wendell & Pidgeon,* for appellant.

The only question presented by this record is, whether or not there was any evidence tending to establish the relation of master and servant between the defendant and James O'Connell.  Wood, Master and Serv. § 309; Patterson, Railway Accidents, § 103; *Kimball* v. *Cushman,* 103 Mass. 194; *Norris* v. *Kohler,* 41 N. Y. 42; *Jewell* v. *Grand Trunk Ry. Co.,* 55 N. H. 84.

*Wm. E. Culkin* and *J. T. Alley*, for respondent, cited Wood, Master and Serv. § 306; *McCoun* v. *New York C. & H. R. R. Co.*, 66 Barb. 338; *Karsen* v. *Milwaukee & St. P. Ry. Co.*, 29 Minn. 12; *Hoffman* v. *Chicago, M. & St. P. Ry. Co.*, 43 Minn. 334; *Wilson* v. *Northern Pac. R. Co.*, 43 Minn. 519; *Nichols* v. *Chicago, St. P., M. & O. Ry. Co.*, 36 Minn. 452; *Althorf* v. *Wolfe*, 22 N. Y. 355; *Booth* v. *Mister*, 7 Car. & P. 66; *Randleson* v. *Murray*, 8 Ad. & E. 109.

MITCHELL, J.   The plaintiff brought this action to recover for personal injuries to his infant child, caused by the negligence of the alleged servant of the defendant.   1878 G. S. ch. 66, § 34.

The injuries were inflicted by one O'Connell, and the only question presented by this appeal is whether O'Connell was defendant's servant.   The evidence, in which there is no material conflict, is substantially as follows:   The defendant maintained a public depot and freight and passenger station at the village of Waverly.   The premises were owned and controlled by the defendant, but the Great Northern Express Company and the Western Union Telegaph Company had their offices in the same building, one Westinghouse being the common agent for all three companies.   Westinghouse had exclusive charge of all of defendant's business at the station.   He testified that he had no authority to employ any assistants, such authority being exclusively vested in the general officers of the company; and, as respects express authority, this testimony is not contradicted.   For a year or more before the injury complained of, Westinghouse had permitted a young man named Foutch to use and practice on the instruments in the office, for the purpose of learning telegraphy; and during that time Foutch had been in the habit, as occasion required, of assisting Westinghouse in the performance of his railway duties, such as selling tickets, handling freight, putting out switch lights, etc.   He had no contract with the railway company, and received no wages; the work he did evidently being in return for the privilege of the office, and the use of the instruments, in learning telegraphy.   There is no evidence that the general officers of the defendant knew of or assented to Foutch's performing this work, except the length of time it had continued, and the absence of any testimony that they ever objected.   About ten days before the accident, Westinghouse, with the permission of

the Western Union Telegraph Company, gave O'Connell the privilege of the office, and the use of the instruments, for the purpose of learning telegraphy, evidently under substantially the same arrangement by which he had previously given Foutch similar privileges. O'Connell had no contract with the defendant, and received no wages.   The time between his coming into the office and the date of the accident was so brief that the evidence is very meager as to his doing railroad work about the station during that time, but there was evidence tending to show that he had on several occasions, with the knowledge and consent of Westinghouse, handled freight. On the day in question, he went to work, with a truck, to move some goods from the station platform into a freight room.    Foutch assisted him by piling up the goods in the room while O'Connell carried them in.    While thus handling the truck, O'Connell ran it against plaintiff's child, who was walking around the depot, and inflicted the injury complained of.    There is no evidence that at or prior to the accident the general officers of the defendant knew that O'Connell was employed about the station.    But both Foutch and O'Connell, after the accident, continued at the depot, practicing telegraphy, and assisting Westinghouse, as before, in selling tickets, handling freight, etc., and were still doing so at the date of the trial, which was five months after the accident and over four months after the commencement of this action; and, while there is no direct evidence that this was with the knowledge of the general officers of the defendant, there is no evidence that they did not know of it, and none that they ever objected to it.    Such we believe to be a fair and full statement of the effect of the evidence.

Under the doctrine of respondeat superior, a master, however careful in the selection of his servants, is responsible to strangers for their negligence committed in the course of their employment. The doctrine is at best somewhat severe, and, if a man is to be held liable for the acts of his servants, he certainly should have the exclusive right to determine who they shall be.    Hence, we think, in every well-considered case where a person has been held liable, under the doctrine referred to, for the negligence of another, that other was engaged in his service either by the defendant personally, or by others by his authority, express or implied.    There is a class of cases, of which *Bush* v. *Steinman,* 1 Bos. & P. 404, (often doubted

and criticised,) is an example, which seem to hold that a person may be liable for the negligence of another, not his servant.    But these were generally cases where the injury was done by a contractor, subcontractor, or their servants, upon the real estate of the defendant, of which he was in possession and control; and they seem to proceed upon the theory that, where a man is in possession of fixed property, he must take care that it is so used and managed by those whom he brings upon the premises as not to be dangerous to others.    In that view, he is held liable, not for the negligence of another, but for his own personal negligence in not preventing or abating a nuisance on his own premises.    See *Laugher* v. *Pointer*, 5 Barn. & C. 547.    There will also be found in some text-books statements to the effect that where a servant is employed to do a particular piece of work, and he employs another person to assist him, the master is liable for the acts of the person so employed, as much as for the acts of the servant himself.    Thus generally stated, without qualification, the proposition is misleading, as well as inaccurate.

The cases most generally cited in support of it are *Booth* v. *Mister*, 7 Car. & P. 66, and *Althorf* v. *Wolfe*, 22 N. Y. 355.    In *Booth* v *Mister* the defendant's servant, whose duty it was to drive his master's cart, was riding in the cart, but had given the reins to another person, who was riding with him, but was not in the master's employment, and through the negligent management of this other person the plaintiff was injured.    The defendant was held liable, not for the mere negligence of such other person, but for the negligence of the servant himself, who was riding in the cart, and either actively or passively controlling and directing the driving, as much as if he had hold the reins in his own hands.

In *Althorf* v. *Wolfe*, a servant, having been directed to remove snow from the roof of his master's house, secured the services of a friend to assist him; and while the two were engaged together, in throwing the snow from the roof into the street, a passer-by was struck and killed.    It was held that it was immaterial which of the two threw the ice or snow which caused the injury; that in either case the master was liable.    The case is a very unsatisfactory one, and it is very difficult to ascertain the precise ground upon which it was

v.55M.—29

decided.    Wright, J., seems to put it on one or all of three grounds:
(1) That the servant had implied authority to procure assistance;
(2)   that defendant's family, who were left in charge of the house,
ratified the act of the servant; and (3) upon the same ground upon
which *Booth* v. *Mister* was decided.    On the other hand, Denio, J.,
seems to place his opinion upon the ground upon which we have sug-
gested that *Bush* v. *Steinman* proceeds.    It is also to be observed
that two of the justices dissented.    But neither of these cases, if
rightly understood, is in conflict with the proposition with which we
started out,—that a master, as such, can be held liable for the
negligence only of those who are employed in his work by his
authority; and hence, if a servant who is employed to perform a
certain work procures another person to assist him, the master is
liable for the sole negligence of the latter, only when the servant
had authority to employ such assistant.    Such authority may, how-
ever, be implied as well as express, and subsequent ratification is
equivalent to original authority; and, where the servant has author-
ity to employ assistants, such assistants, of course, become the im-
mediate servants of the master, the same as if employed by him per-
sonally.    Such authority may be implied from the nature of the
work to be performed, and also from the general course of conduct-
ing the business of the master by the servant for so long a time that
knowledge and consent on part of the master may be inferred.
It is not necessary that a formal or express employment on behalf
of the master should exist, or that compensation should be paid
by or expected from him.    It is enough to render the master liable
if the person causing the injury was in fact rendering service for
him by his consent, express or implied.

Under this view of the law, the evidence made a case for the jury
to determine whether Westinghouse had implied authority from the
defendant to employ O'Connell as an assistant, or, to state the ques-
tion differently, whether O'Connell was rendering these services for
the defendant by its consent.

If the evidence were limited to the employment of O'Connell
alone, and to what occurred during the ten days preceding the
accident, it would probably be insufficient to support a verdict in
favor of the plaintiff.    But it is an undisputed fact that Westing-
house had for over a year before this been employing Foutch as an

assistant under a similar arrangement, without, so far as appears, any objection on part of the defendant, although the length of time was such that its knowledge of the fact may be fairly inferrred. It is true that implied authority to employ Foutch as assistant would not necessarily include authority to employ O'Connell, but the fact of Foutch's long-continued employment has an important bearing upon the question of Westinghouse's implied authority, as indicated by the manner of conducting the business; and, as bearing upon this same question of implied authority, the fact is significant that after the accident both Foutch and O'Connell continued, without objection, to perform these services for defendant, as assistants to Westinghouse, up to the date of the trial. Additional force is added to all this, when considered in connection with the nature of the duties of a station agent at a place like this, which are of such multifarious character as to render the employment of an occasional assistant not only convenient, but almost necessary. The facts that the consideration for the services of these assistants moved from Westinghouse, rather than defendant, and that their aid was for the accommodation or convenience of Westinghouse, are not controlling.

There is nothing in the point that defendant is not liable because the freight which O'Connell was moving had been delivered to the consignee, who had promised to take care of it where it laid, on the station platform.

O'Connell's act was in the line of his employment, and was being done in furtherance of defendant's business. The liability of the defendant to third parties cannot be made to depend upon the question whether, as between it and the owner of the goods, it owed the latter the continued duty of taking care of them.

Order affirmed.

(Opinion published 57 N. W. Rep. 144.)