## THOMAS G. WILDE v. IDA PEARSON AND ANOTHER.[1]

June 28, 1918.

No. 20,916.

**Parent's liability for unauthorized use of automobile.**

Where a parent keeps an automobile for the use of her family, and a daughter 16 years of age takes the same in the absence of the parent and turns it over to a stranger who operates the same, in the absence of the daughter, so negligently as to cause injury to others, the parent is not responsible for such negligence.

Action in the district court for Ramsey county by the administrator of the estate of Seth Thomas Wilde, deceased, to recover $7,500 for the death of his intestate. The facts are stated in the opinion. The case

[1]Reported in 168 N. W. 582.

was tried before Hanft, J., who at the close of the testimony denied defendants' motion for a directed verdict, and a jury which returned a verdict for $3,303. From an order denying a motion for judgment in their favor notwithstanding the verdict or for a new trial, defendants took separate appeals. Reversed as to Ida Pearson and affirmed as to Wyline Pearson.

*Hoke & Bauers, C. M. Bracelen* and *F. H. Durham,* for appellants.
*Denegre & McDermott* and *Harry S. Stearns,* for respondent.

QUINN, J.

Action by Thomas G. Wilde, as administrator of the estate of Seth Thomas Wilde, deceased, to recover damages for his death alleged to have been caused by wrongful act. Plaintiff recovered a verdict. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed.

The defendant Ida Pearson resided at 284 Harrison avenue, St. Paul, with her family, which included the daughter Wyline, aged 16, a younger son and a sister. In the spring of 1916, Mrs. Pearson purchased an automobile for the use of the family. Wyline learned to drive the car and used it considerably during the summer. On October 11 Mrs. Pearson went to the northern part of the state with her son who was ill. Before leaving she had the auto dismantled and set on blocks in the garage for the winter. Wyline remained at home with her aunt. She gave a Hallowe'en party at the home on October 30. At that time she and Gordon Allen, a young man acquaintance, reassembled the car and used it to bring guests to the party, and thereafter they used it frequently without the knowledge of Mrs. Pearson. On Wednesday preceding the accident, Wyline invited Edward Murphy and a number of other young people to a party to be given at the Foster cottage at Bald Eagle lake on Saturday, December 2. It was arranged that the guests were to be met and taken out in the car. About noon on that day Wyline, Allen and one or two others went out to the cottage. They had a skating party during the afternoon. At about 6 o'clock Allen drove to St. Paul at Wyline's request to bring some of the guests out to the party. He returned with but one and Wyline requested him to go back and bring the others out. Allen returned to town where he met Murphy and a

friend, Seth Wilde. Murphy asked Allen if he might invite Wilde to accompany them. Allen consented and they then picked up two other young people and were about to start on their way to the cottage when Allen discovered that the gas line on the car was broken. He then went to a nearby garage and had it repaired. At about one o'clock at night they started on their way. Allen was driving, Murphy, Wilde and a young lady were in the rear seat. The car was running at a very high and unlawful rate of speed. They came to a curve in the road where it was dark, the car skidded and struck a telephone pole with such force that it was completely wrecked, and Wilde so injured that he died from the effects thereof.

It is uncontradicted that the use of the car by Wyline and Allen after Mrs. Pearson went north was without her knowledge or permission. Wyline testified that before going north her mother forbade her the use of the car. Mrs. Pearson testified that she had forbidden Allen, over the telephone, to see or visit Wyline, while Allen denied that Mrs. Pearson ever told him personally that he could not see Wyline. He admitted that he had often heard that she was opposed to his visiting Wyline. The deceased was an entire stranger to Allen and to both of the defendants. All of the invited guests were young people ranging from 16 to 20 years of age. They were not chaperoned. They were going out to the cottage to remain over Sunday. It can hardly be said from the showing made that upon this occasion the car was being used for the purposes for which it was kept by the owner, especially when the manner in which the use of it was obtained is considered. The testimony of Wyline as to her mother's forbidding her the use of the car while she was away is corroborated by the fact that the car was dismantled, the batteries ordered stored away and the car placed on blocks in the garage for the winter. This is all inconsistent with the idea that Wyline had any right or permission from her mother to reassemble or use the car during her absence. Nor are there any facts tending to show the contrary. The case of Jensen v. Fischer, 134 Minn. 366, 159 N. W. 827, has no application to the facts in this case.

It is apparent that Allen exercised full control over the car at the time in question. On the first trip when he arrived at St. Paul the parties were not all quite ready to go and they wanted him to wait until

about 10 o'clock, but he decided to return at once. Two witnesses testified that he was drinking that night. This he denied. On the last trip he drove directly to Parker's drug store, arriving at about 10 o'clock, where he found Murphy, Seth Wilde and another. Murphy asked if he might take a friend along, and at the same time introduced Mr. Wilde to Allen. Wilde was an entire stranger to Wyline. At this time Allen discovered that the gas line on the car was broken. He went to a garage and had it repaired. At about one o'clock they started back to the lake with the result above stated. Wyline was not present on any of these trips and could in no way have acquiesced in the reckless driving. Wilde did not know who owned the car and apparently trusted himself with those therein.

We have, then, a case where the parent owned the car. She had caused it to be stored away for the winter. In her absence and without permission the daughter had taken the car and turned it over to a third party, who, in the absence of the daughter, was operating the same at an unlawful rate of speed at the time of the accident. The facts are unlike those in Geiss v. Twin City Taxicab Co. 120 Minn. 368, 139 N. W. 611, 45 L.R.A.(N.S.) 382. There the servant was present and acquiesced in the doing of the negligent act which was the proximate cause of the accident, and the negligence was held to be that of the servant for which the master was responsible. In the present case, the negligent act, the driving of the car around a curve in the dark at a dangerous rate of speed, was done by one without authority, a third party, and not in the presence of the daughter. We think the facts shown in this case fail to establish liability on the part of the defendant Ida Pearson. Haluptzok v. Great Northern Ry. Co. 55 Minn. 446, 57 N. W. 144, 26 L. R. A. 739.

Reversed as to appellant Ida Pearson and affirmed as to appellant Wyline Pearson.