LOUISE SCHLICK v. OSCAR BERG AND ANOTHER.
L. J. DORENKEMPER, APPELLANT.[1]

June 16, 1939.

No. 32,037.

[1]Reported in 286 N. W. 356.

*Rol E. Barron* and *Peter Ahles,* for appellant.
*Robert Pearson* and *Dell & Rosengren,* for respondent.

STONE, JUSTICE.

Action for personal injury with verdict for plaintiff. Defendant L. J. Dorenkemper appeals from the order denying his motion in the alternative for judgment notwithstanding or a new trial.

Plaintiff was injured during the remodeling of a building of which her employer was tenant and Oscar Berg owner. (He is out as defendant because of a verdict in his favor.) The contract for remodeling was made orally by Berg and Carl Dorenkemper, son of defendant. Carl supervised the work. The dominant question is whether evidence justifies the finding that the contract was made and performed by Carl as the agent of his father so as to make the latter liable for the negligence of the employes engaged in the work. Throughout our consideration it will be convenient to refer to L. J. Dorenkemper as defendant and to his son merely as Carl.

The work was to be done for cost plus ten per cent. The lumber came from the Dorenkemper Lumber Company, of which defendant was sole proprietor. The contract was carried on the books of the lumber company as the "Berg Job." When Carl presented the bill for lumber to Berg, it was upon the printed statement of the lumber company, showing the company as creditor and Berg as debtor. This bill and the bills for labor, Berg paid by one check to Carl, who in turn paid defendant for the lumber.

The equipment used in the work appears to have been the property of Carl. His also was the profit, the only benefit to Dorenkemper being payment for the lumber.

Such are the salient facts about the Berg contract. It is insisted for plaintiff that they are enough to show a relationship of principal and agent between defendant and Carl. Just as strongly does defendant contend that there is no evidence of agency.

There is evidence that Berg and Carl treated the contract as one on behalf of the lumber company, and that the latter acquiesced

in that view by carrying the lumber as the "Berg Job." But Carl's ownership of the equipment and supervision of the work, the fact that Berg made payment to Carl, and that Carl retained the profit, paying to the company only the price of the lumber, all indicate that Carl was not the agent of defendant. The facts are equivocal. If there were evidence only of the Berg contract, we doubt that the verdict could be sustained.

But there was other evidence. Shortly after plaintiff was injured during remodeling of the Berg store, Carl entered into a contract to construct a building for one Piche, signing the contract "Dorenkemper Lumber Co. C. J. Dorenkemper." Again the lumber came from defendant's yard and was carried upon its books as the "Piche Job." Payment for lumber and labor was by checks to the "Dorenkemper Lumber Company." They were endorsed for payment by Carl.

Soon after the accident to plaintiff, Piche became worried and took the contract to defendant, who, according to the testimony of Piche, assured him:

"The contract is okay and you don't need to be afraid of nothing. We stand back of this contract. My son does that work for me all the time like this."

A few months prior to the Berg job, Carl and one Robinson contracted for the rebuilding of some houses. Again Carl signed the contract purportedly on behalf of the lumber company. Robinson received a statement, "In acct with Dorenkemper Lbr Co. Contract for repair and additions to three houses—as per agreement." Despite Dorenkemper's denial of knowledge of this contract, he did in his own hand make out a deposit slip for the check in payment of the above statement, writing on it "Robinson."

There was an earlier contract to erect a schoolhouse, in respect to which the jury could easily have found that Carl was acting either as agent or partner of defendant. As to all such contracts the books of defendant's lumber company reflected no charge against Carl. All debits were against the "Job." Checks in payment, whether made to defendant, Carl, or the Dorenkemper Lum-

ber Company, were endorsed for payment frequently by Carl and sometimes by defendant. The latter always got payment for his lumber.

■ For plaintiff reliance is correctly put upon authority in fact rather than authority resulting from holding out or estoppel. That is because authority by holding out is of no importance until a third party relies thereon. See Eberlein v. Stockyards M. & T. Co. 164 Minn. 323, 204 N. W. 961; Karon v. Kellogg, 195 Minn. 134, 261 N. W. 861. In the ordinary personal injury case the injured person does not rely upon authority of any kind in getting hurt. Proof of actual authority is therefore essential to recovery. Restatement, Agency, § 265; 2 Mechem, Agency (2 ed.) §§ 1858-1859. To this there are some exceptions. Restatement, Agency, §§ 266-267.

In Jewison v. Dieudonne, 127 Minn. 163, 149 N. W. 20, plaintiff was allowed to recover from defendant for injuries received on the premises of a business in which defendant had formerly been a partner. Liability was based upon the invitation implicit in the continued use of defendant's name in conduct of the business. The court considered that because plaintiff went upon the premises in reliance upon that invitation, defendant was responsible. Cf. Restatement, Agency, § 267. For adverse criticism of the case see 15 Col. L. Rev. 80-81.

■ For defendant it is insisted that Carl at no time had authority to represent him in any of the contracts, and that, whatever evidence there may be of apparent, there is none of actual, authority.

The argument misconceives what is meant by actual authority. Authority of this kind can of course be shown by express agreement between principal and agent. But it can also be inferred from the course of dealing between the two. All authority must be traced to the principal. But it may be found in his adoption of, or acquiescence in, similar acts done on other occasions by the assumed agent. It then becomes what is conveniently but inaccurately called implied authority. In result it is actual or express authority, its expression being by the conduct rather than by the words of the principal. Only the evidence of it is found in implication by conduct.

In Haluptzok v. G. N. Ry. Co. 55 Minn. 446, 57 N. W. 144, 145, 26 L. R. A. 739, the question was whether an employe of the railroad had authority to hire Y so as to render the railroad liable for Y's negligence. Long before the employe let Y help him in his work he had been in the habit of getting aid from X. There was no evidence that the general officers of the railroad knew of or consented to the employment of either X or Y "except the length of time it had continued, and the absence of any testimony that they ever objected." It was said that [55 Minn. 450]:

"* * * authority may be implied from * * * the general course of conducting the business of the master by the servant for so long a time that knowledge and consent on part of the master may be inferred."

It was held that there was evidence justifying the finding that the employe had authority to hire Y.

Authority was found in the principal's knowledge of and acquiescence in similar acts of the agent in the past. Knowledge was inferred from the length of time over which the acts had continued, and acquiescence from the lack of objection. Here too is evidence of the principal's knowledge and acquiescence, the former to be inferred from defendant's close contact with the other similar contracts. There is no evidence of objection. We think there was established such a course of dealing by defendant, the principal, as to make the question of agency one of fact. For all that a good capsheaf was defendant's admission to Piche that "my son does that work for me all the time like this."

■ Error is assigned because the court admitted evidence of certain nontestimonial declarations of Carl, made in the course of negotiations purportedly carried on for defendant, tending to show agency. The argument is that there was an attempt to prove agency by the unsworn statements of the agent. Plaintiff contends that such statements are admissible, as part of the *res gestae,* when there is other competent evidence of agency, citing Farnum v. Peterson-Biddick Co. 182 Minn. 338, 234 N. W. 646; Drabek v. Wedrickas, 182 Minn. 217, 234 N. W. 6. That is the correct view.

, Where, as here, the only purpose of the statements is to bind the principal by showing authority, the sayings of the agent, without more, are hearsay. To bring them in it must be shown that there was authority to make them—that is, they must be part of an act which can be said to be within the agent's authority. Farnum v. Peterson-Biddick Co.; Drabek v. Wedrickas, both *supra;* Restatement, Agency, § 284; 1 Mechem, Agency (2 ed.) § 285, especially footnote 81, and 2 Mechem, Agency (2 ed.) § 1773, *et seq.;* 2 Wigmore, Evidence (2 ed.) § 1078. *Cf.* Smith v. Emporium Merc. Co. Inc. 190 Minn. 294, 251 N. W. 265. Here, as already indicated, there was enough evidence of authority to admit the statements of the agent, which were part of the *res gestae.*

■ The record tells a lively tale of one of the too frequent clashes between counsel over the existence or nonexistence of public liability insurance. We do not go into the facts because it is clear that counsel for defendant invited, or at least the trial judge could reasonably so have considered, all the advertisement there was of the whole question of insurance. For that reason we hold that there was no misconduct to a degree necessary to justify a new trial.

Order affirmed.

Mr. Justice Hilton, being incapacitated by illness, took no part.

[1]Reported in 286 N. W. 353.