## CARL FOX AND OTHERS v. WILLIAM A. MORSE AND ANOTHER.

96 N. W. (2d) 637.

May 15, 1959—No. 37,532.

*Merlyn C. Green* and *Bundlie, Kelley & Maun,* for appellant.

*Frederick A. Collatz, Thomas, Bradford, King & Collatz, Thomas J. Burke,* and *Stacker & Stacker,* for respondents.

KNUTSON, JUSTICE.

This is an appeal from an order denying alternative motions of defendant William A. Morse for judgment notwithstanding the verdict or a new trial.

Defendant William A. Morse was the owner of an apartment hotel in St. Paul known as the Willard Hotel. There were some 90 units in the hotel, consisting for the most part of apartments. Morse does not live in the hotel but lived in Minneapolis. In the operation of this hotel, Morse had six regular employees. Mrs. Alberta Howard was known as manager or caretaker, and among her duties she rented apartments; had responsibility for decorating and redecorating apartments; received complaints of tenants; inserted ads in newspapers for help when needed and interviewed prospective employees; kept the books of the hotel's operations and made out the payroll for employees; ordered hotel supplies from regular suppliers as they were needed; drew the payroll and expense checks, which then were signed by Morse; computed withholding and social security taxes of employees; was responsible for pest control and ordered the work necessary therefor done as it was needed; and in general had full charge of the operation of the hotel.

In addition to Mrs. Howard, the regular employees consisted of Sylvester W. Davis, a full-time painter and maintenance man; two maids; a nightman; and a general maintenance man and stationary engineer. Normally, these six employees were sufficient to operate the hotel, but on occasions additional help was required for short periods of time.

On December 11, 1955, Davis had fallen behind in his work, and he and Mrs. Howard discussed the matter of procuring some additional help. As a result of this discussion, defendant William Oswald was told to report for work, and he did so on December 12. He worked all that day and again reported for work on the next day. Part of his work on December 13 consisted of removing varnish from the floor in one of the apartments. In performing this work he used a highly inflammable liquid as a varnish remover. The old varnish that was removed and rags which had been saturated with inflammable liquid were placed in a metal pan as they were discarded. During the course of this work he threw a cigarette which he assumed had been extinguished into the refuse pan, and a fire resulted which quickly spread throughout the building, virtually destroying two entire floors thereof.

Separate actions were brought by 45 tenants of the building against Morse and Oswald to recover damages for the loss of personal property destroyed by the fire on the ground that the fire was negligently started by Oswald, who was an employee of Morse. Oswald has not answered and is in default. Morse will be referred to herein as defendant. In a pretrial conference it was agreed that the issues of the negligence of Oswald and the liability of Morse would be tried first and that all the actions should be controlled by the outcome of this trial as to those issues, leaving only the issue of damages to be tried in each individual case. The jury returned a verdict against defendant.

It is the contention of defendant Morse that Oswald was not his employee or agent. The case was submitted to the jury for a determination of whether Oswald was an employee of Morse and whether his negligence caused the fire. No issue is made of the jury's determination of the issue of negligence or proximate cause on this appeal. Two questions are presented here: (1) Does the evidence sustain the jury's finding that Morse had authorized the employment of Oswald? (2) If not, did he ratify such employment?

■ The applicable principles of law are not seriously in dispute. The rule with respect to liability of a master for negligence of a servant probably is as well expressed in Haluptzok v. G. N. Ry. Co. 55 Minn. 446, 450, 57 N. W. 144, 146, 26 L. R. A. 739, 741, as anywhere. We there said:

"* * * a master, as such, can be held liable for the negligence only of those who are employed in his work by his authority; and hence, if a servant who is employed to perform a certain work procures another person to assist him, the master is liable for the sole negligence of the latter, only when the servant had authority to employ such assistant. Such authority may, however, be implied as well as express, and subsequent ratification is equivalent to original authority; and, where the servant has authority to employ assistants, such assistants, of course, become the *immediate* servants of the master, the same as if employed by him personally. Such authority may be implied from the nature of the work to be performed, and also from the general course of conducting the business of the master by the servant for so long a time that knowledge and consent on part of the master may be inferred. It is not necessary that a formal or express employment on behalf of the master should exist, * * *. It is enough to render the master liable if the person causing the injury was in fact rendering service for him by his consent, express or implied."

In 57 C. J. S., Master and Servant, § 564a, the rule with respect to the authority of a servant to employ assistants is stated thus:

"* * * The authority to employ assistants may be either express or implied; it may be implied from the nature or extent of the work to be performed, from the circumstances of the particular case, from the general course of conducting the business of the master by the servant, as where it is such as necessarily requires the help of others,[1] * * *.

\* \* \* \* \*

"*Ratification.* A master may also become liable for the acts of an assistant employed by the servant where he ratifies such employment."

---

[1] See, also, 35 Am. Jur., Master and Servant, § 540; 3 Mich. L. Rev. 198; 30 Dicta 166.

■ There is some discussion by defendant of apparent authority. Apparent authority which rests on an estoppel to deny authority based on a third party's reliance on the appearance of authority permitted by the principal[2] is not involved here. None of the tenants injured by the fire claim any reliance upon such appearance of authority.

■ Implied authority as we use the term here is actual authority, circumstantially proved.[3] It is actual authority inferred from a course of dealing between the alleged principal and his alleged agent.[4]

■ When the authority of an agent is proved circumstantially, inference of authority must be drawn from facts for which the principal is responsible.[5]

■ With these general rules in mind, the principal question before us is whether there is evidence in this case from which an inference may justifiably be drawn that Morse had conferred upon Mrs. Howard authority to hire part-time employees as they were needed, and particularly defendant Oswald.

Both Morse and Mrs. Howard testified that Mrs. Howard had definite orders that she could not hire any help without first procuring the consent of Morse. The credibility of their testimony, however, was considerably shaken and was in many respects impeached by statements made in pretrial depositions and by the evasive character of the testimony of Mrs. Howard. As an example of the inconsistency in the testimony of Mr. Morse, he stated in answer to one question:

"I was consulted on everybody, except some of the other, one or two day help, why, they might speak of it, and they might not, but generally they did."

This statement, together with statements made in his pretrial deposition, could easily lead the jury to believe that Morse was coloring his testimony to establish a fact that was of extreme importance to him.

---

[2]Schlick v. Berg, 205 Minn. 465, 286 N. W. 356.

[3]Rommel v. New Brunswick Fire Ins. Co. 214 Minn. 251, 8 N. W. (2d) 28.

[4]Schlick v. Berg, 205 Minn. 465, 286 N. W. 356; Haluptzok v. G. N. Ry. Co. 55 Minn. 446, 57 N. W. 144, 26 L. R. A. 739.

[5]Riteway Carriers, Inc. v. Schue, 248 Minn. 299, 79 N. W. (2d) 505; Nerlund v. Schiavone, 250 Minn. 160, 84 N. W. (2d) 61.

In Mrs. Howard's pretrial deposition she testified as follows:

"Q. And on occasion when you needed help, you would hire some-body and then inform him [Morse] afterwards that you had hired some-one?

"A. Oh, that didn't happen every time.

"Q. No, I realize that, but that did happen on occasion?

\* \* \* \* \*

"A. Well, naturally, yes. We didn't do that every time."

There is no need to go into more detail as to the discrepancies in the evidence. It is admitted that Mrs. Howard authorized Davis to procure Oswald and that she did not call Morse after he was hired, although Morse was available at all times and could be reached on the telephone. Oswald worked one full day and part of another day before the fire. The testimony of Mrs. Howard was highy unsatisfactory because of frequent lapses of memory on vital questions, and the jury could easily conclude that she was not telling all that she knew. Both she and Davis, who were directly responsible for hiring Oswald, have been retained as employees in spite of the claim that they exceeded their authority and, as a result, have possibly subjected Morse to substantial liability. Further than that, it was not until long after the fire that Davis and Mrs. Howard learned that Morse claimed that Oswald was not his employee. The admitted duties of Mrs. Howard were far from menial in character. It can hardly be disputed that she did practically everything required to operate the hotel except to sign the checks which she prepared for Morse's signa-ture. When it was decided on December 11 that Davis needed some extra help temporarily, he was told by Mrs. Howard to "look around and see if you can find somebody to help you out." As a result, Oswald was contacted and he reported for work. Both Mrs. Howard and Davis looked in on him frequently while he was working on Monday and a part of Tuesday. From an examination of all the evidence, we are convinced that the jury was justified in inferring that Mrs. Howard had been granted authority to hire temporary help as it was needed and that Oswald was hired pursuant to such authority.

The trial court also permitted the jury to determine whether there had been a ratification of the act of hiring Oswald by Mrs. Howard if in fact she lacked authority to do so in the first instance. In so doing,

the court instructed the jury:

"In determining this issue of ratification, you may take into consideration any evidence of action or non-action by Mr. Morse after the fire bearing on the question of whether or not Mr. Morse, by conduct, ratified and accepted the hiring of Oswald."

Ratification of another's unauthorized act occurs when a party, with full knowledge of all material facts, confirms, approves, or sanctions the other's acts.[6] Where an act is done without precedent authority, ratification creates the relationship of principal and agent, and the principal is bound to the same extent as if the act had been done under prior authority.[7]

■ The evidence relied upon to establish ratification is not strong, but here, again, there was enough to permit an inference of its existence. On the day that Oswald was hired, Mrs. Howard made out a check payable to him for $32, representing what was to have been his compensation for 4 days' work. The fire occurred on Tuesday, December 13, and Morse was advised, at least by rumor and possibly by radio and television, that it was believed that the fire was caused by his employee Oswald. He made no inquiry of Mrs. Howard or anyone else as to who Oswald was and at that time did not disclaim authority on the part of Mrs. Howard to hire Oswald. On Wednesday, December 14, the day after the fire, Morse signed the check payable to Oswald which Mrs. Howard had made out the day before the fire. The check was never delivered to Oswald, probably because he never completed 4 days' work. He did not return to work after the fire. It was, however, delivered to Davis. Davis held it for a time and then destroyed it. Neither Davis nor anyone else was informed by Morse to destroy the check, and it was not until some time after the fire that Davis was told by Morse's attorney that Morse claimed that Oswald was not his employee at the time of the fire. Davis finally paid Oswald $12 out of his own pocket and at the time of the trial had not been reimbursed. Here, again, the jury could consider the fact that Mrs. Howard and Davis have been retained as employees of Morse in spite of the alleged unauthorized

[6]Strader v. Haley, 216 Minn. 315, 12 N. W. (2d) 608, 150 A. L. R. 970; 1 Dunnell, Dig. (3 ed.) § 181.

[7]Strader v. Haley, *supra;* 1 Dunnell, Dig. (3 ed.) § 191.

conduct on their part in hiring Oswald. In view of these facts, the evidence sufficiently sustains an inference of ratification.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.