21737

</div>

Doris L. FERNANDER, Administratrix of Estate of Brenda Fernander, Appellant, v. Cecil THIGPEN, A & H Foods, Inc., and Burger Chef Systems, Inc., of which Burger Chef Systems, Inc., is Respondent.

(293 S. E. (2d) 424)

*Edward V. Atkinson* and *Ramon Schwartz, Jr.*, Sumter, *for appellant.*

*Jack W. Erter, Jr.*, Sumter, *for respondent.*

June 16, 1982.

Ness, Justice:

Appellant, Fernander appeals an order granting summary judgment in favor of respondent, Burger Chef Systems, Inc. The lower court denied any agency relationship flowing from Burger Chef Systems, Inc. We disagree and reverse.

Brenda Fernander was fatally injured in an automobile accident while she was a passenger in a car driven by Cecil Thigpen, assistant manager of the Burger Chef in Sumter, where she was an employee. On the evening of the accident Brenda had worked late at the Burger Chef and when her father called concerning the late hour and his coming for Brenda, the assistant manager told Mr. Fernander not to come for Brenda, but stated, he would bring her home. Brenda was killed while riding home with Thigpen.

Deceased's estate instituted wrongful death and survival actions against Thigpen, Burger Chef, and A & H Foods, Inc., the Burger Chef franchisee in Sumter. The trial court denied liability as to Burger Chef based on their franchise agreement with A & H Foods, Inc.[1]

---

[1] Harold R. Blevins and Noredda Blevins are the sole stockholders of A & H Foods in Sumter.

This case raises two issues. First, whether there was any evidence of an agency relationship between Burger Chef and A & H Foods; and second, whether the franchise agreement between them is sufficient to relieve Burger Chef of any liability.

Generally, "[q]uestions of agency ordinarily should not ■ be resolved by summary judgment where there are *any* facts giving rise to an inference of an agency relationship." (Emphasis added.) *Reid v. Kelly & Play Air, Inc.*, 274 S. C. 171, 174, 262 S. E. (2d) 24 (1980); *Jamison v. Howard*, 271 S. C. 385, 247 S. E. (2d) 450 (1978).

Here the trial court held the franchise agreement between the parties conclusive as to their business relationship, relying upon the decision in *Murphy v. Holiday Inns, Inc.*, 216 Va. 490, 219 S. E. (2d) 874 (1975).[2]

We hold the present case is distinguished from *Murphy* in two crucial respects. First, in *Murphy* the plaintiff offered only the licensing agreement as evidence of an agency relationship, and the court based its decision *solely* upon that agreement. In contrast here direct testimony was offered by several witnesses to show agency. *"Murphy*, therefore, will not be dispositive unless the plaintiff relies solely upon the licensing agreement." *Hayward v. Holiday Inns, Inc.*, 459 F. Supp. 634 at 636 (Va. 1978).

Secondly, the *Murphy* opinion did not address the issue of apparent or ostensible authority as the issue was not properly raised before the court. *Murphy*, supra 219 S. E. (2d) at 875. Thus *Murphy* is not applicable here.

In the present case the trial court refused to allow the ■ question of apparent agency to be submitted to the jury based solely on the fact that the deceased plaintiff was an employee of the franchisee. We think this was error since the decedent was not injured in the scope of her employment and moreover since a *factual issue remains* as to whether Thigpen was an apparent agent of Burger Chef *regardless of the status of the injured party.* ·

---

[2] In *Murphy* the Virginia Supreme Court found that a license agreement, which permits the operator of a motel to use the name "Holiday Inn" subject to certain terms and conditions, created no principal-agent or master-servant relationship.

Generally agency may be implied or inferred and may ■ be circumstantially proved by the conduct of the purported agent exhibiting a pretense of authority with the knowledge of the alleged principal. *Fochtman v. Clanton's Auto Auction Sales*, 233 S. C. 581, 106 S. E. (2d) 272 (1958).

The doctrine of apparent authority provides that the ■ principal is bound by the acts of its agent when it has placed the agent in such a position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe the agent has certain authority and they in turn deal with the agent based on that assumption. *Fochtman v. Clanton's Auto Auction Sales*, supra. See generally, West's General Digest, Principal & Agent, Key #99.

Here the plaintiff presented direct evidence on this issue.

Cecil Thigpen, the assistant manager of the restaurant, testified he thought he worked for Burger Chef and further thought Burger Chef was A & H Foods.

Another witness, Michael McCrae, an employee of A & H Foods also stated he thought he worked for Burger Chef Corporation.

Moreover, the physical appearance of the building displayed the distinctive Burger Chef sign, and the business used Burger Chef napkins, uniforms and advertising.

Obviously, all of this evidence infers A & H Foods, Inc. was an agent of the Burger Chef Corporation despite the provision in the franchise agreement requiring A & H Foods to remain an independent contractor.

A true agency relationship may be established by ■ showing evidence of apparent or implied authority, even where the parties have entered an agreement to the contrary. *Burriss v. Texaco, Inc.*, 361 F. (2d) 169 (4th Cir. 1966); *Hubbard v. Rowe, et al.*, 192 S. C. 12, 5 S. E. (2d) 187 (1939). The Fourth Circuit, stated in *Burriss*, supra:

"Under South Carolina law, the terms of a consignment agreement are *not* conclusive on the question of independent contractor, where there is evidence [beyond] the contract which establishes a true agency relationship." (Emphasis added.) *Burriss v. Texaco, Inc.*, supra, at 172; *Hubbard v. Rowe*, supra.

■ The test to determine agency is whether or not the purported principal has the *right to control* the conduct of his alleged agent. Id.

A review of the terms of the franchise agreement shows Burger Chef, Inc. retained the right to control the detailed operation of the enterprise so that A & H Foods was in fact Burger Chef's agent doing business in Sumter, South Carolina.

Burger Chef retained control of "the Trademarks" the restaurant used, the menu, the quality of food and service, the manner and equipment to be employed in preparing the food, and, most importantly, the daily operating policies of the restaurant including management of the employees. Paragraph 10.2 of the agreement gives Burger Chef the right to require *all* personnel to "comply with *all reasonable requirements . . .*" made by them. (Emphasis added.) (Tr. 50, f. 39-40.) The entirety of this agreement covers approximately thirty transcript pages and lists thirty-eight particular areas.

We find sufficient evidence in the record to create a jury issue as to whether any agency relationship existed between Burger Chef and A & H Foods. *Guignard Brick Works v. Allen University*, 155 S. Ct. 507, 152 S. E. 707 (1930). Hence, summary judgment was improper.

We reverse and remand to the lower court for trial.

Reversed and remanded.

LEWIS, C. J., and HARWELL, JJ., concur.

LITTLEJOHN and GREGORY, JJ., dissent.

LITTLEJOHN and GREGORY, JJ., (dissenting):

We respectfully dissent and would affirm the order of the Honorable Ernest A. Finney, Jr.

In the franchise agreement, Burger Chef Systems, Inc. granted to Harold R. Blevins and Noredda Blevins the non-exclusive, non-assignable right to use certain company trademarks, service marks and industrial property rights in dispensing food and beverage from the restaurant. The agreement characterizes itself as a license to use certain company trademarks and service marks, etc. in connection with a restaurant that the Blevins sought to operate as independent contractors and not as employees of the company. The agree-

ment specifies that the Blevins shall remain independent contractors and shall have no authority to act as an agent of the company, nor shall the agreement create any relationship of employer-employee or principal-agent. The agreement further provides that all persons whom the franchisees may engage shall be their own servants and employees and not those of Burger Chef.

The Plaintiff-Appellant argues that the franchise agreement gave Burger Chef authority and control of A & H Foods, Inc., operated by the Blevins, such as to establish a master-servant or principal-agent relationship, which, in turn, made their employee (the individual defendant, Thigpen) the agent of Burger Chef.

The Supreme Court of Virginia was faced with the same argument in *Murphy v. Holiday Inns, Inc*, 216 Va. 490, 219 S. E. (2d) 874 (1975) deciding the issue as follows:

> Where, as here, a question of agency Vel Non rests upon written documents and the inferences deducible therefrom, the question is a question of law, for the construction of written documents is exclusively for the Court. (Citations omitted.)

The Virginia Court further said:

> Here, the license agreement contains the principal features of the typical franchise contract, including regulatory provisions. Defendant owned the "brand name," the trademark, and the other assets associated with the "system." Betsy-Len owned the sales "outlet." Defendant agreed to allow Betsy-Len to use its assets. Betsy-Len agreed to pay a fee for that privilege. Betsy-Len retained the "right to profit" and bore the "risk of loss." With respect to the manner in which defendant's trademark and other assets were to be used, both parties agreed to certain regulatory rules of operation.
>
> Having carefully considered all of the regulatory provisions in the agreement, we are of the opinion that they gave defendant no 'control or right to control the methods or details of doing the work,' *Wells v. Whitaker*, 207 Va. 616, 624, 151 S. E. (2d) 422, 429 (1966), and, therefore,

agree with the trial court that no principal-agent or master-servant relationship was created. Id. 219 S. E. (2d) at 877.

We recognize that agency may be proved by direct evidence or by circumstantial evidence or by a combination of the two. The law of apparent authority comes into play only when contractual matters are involved. The theory upon which a principal may be held for activities of one without actual authority arises under the law of estoppel. One may not hold out a person as having apparent authority causing a third party to deal with him thinking him to be an agent and then deny the relationship because he should be estopped. Under the law of torts, the aggrieved person is not mislead and, accordingly, the alleged principal cannot be held unless the direct and circumstantial evidence proves a principal-agency relationship.

We agree with the trial judge that Plaintiff may not gain comfort from the law of apparent authority. He said:

Plaintiff contends that the record contains a question of fact as to whether or not individual defendant Thigpen was an apparent agent of Burger Chef. The concept of apparent authority depends upon the manifestations by one party which lead third parties to believe another is his agent. This concept was recognized in *Gizzi v. Texaco, Inc.*, 437 F. (2d) 308 (1971). In that case, Mr. Gizzi, a steady patron of a Texaco service station, became interested in a 1958 Volkswagon Van offered him by the station operator. Hinman offered to put the vehicle in good working order. After delivery Gizzi became involved in a collision because of the failure of the brakes. He sued Hinman, the station operator and Texaco who owned certain equipment on the premises. The theory of liability of Texaco was that Texaco had clothed Hinman with apparent authority and Gizzi had relied on that authority thinking Texaco would stand behind the repairs. In *Gizzi*, the Court said:

In order for the third person to recover against the principal, he must have relied on the indicia of authority originated by the principal, and such reliance

must have been reasonable under the circumstances. (Citation omitted.)

Unlike the actions before me, *Gizzi* involved a purchaser of a product sole (sic) "apparently" under the franchise trademark who relied upon the franchisor to stand behind its product. Plaintiff has failed to cite any reported cases where the plaintiff was an employee of the franchisee and successfully asserted an apparent agency theory as a means to impose liability on the franchisor.

In the case of *Gobel v. American Railroad Express Company*, 124 S. C. 19, 115 S. E. 900 (1923), this matter is treated as follows:

An agent may commit a tort while engaged in the business delegated to him within the scope of his agency, for which the principal will be liable in damages. Such an act involves no element of creating a new contractual relation between the principal and the third person, by which the representations of the agent would induce the third person to change his situation, and thereby, upon the principle of estoppel, bind the principal. Hence a principal cannot be held liable in damages for the tort of his agent unless the agent was at the time acting within the actual scope of the agency.

The question is discussed in *Fox v. Morse*, 255 Minn. 318, 96 N. W. (2d) 637 (1959) wherein we find the following:

There is some discussion by defendant of apparent authority. Apparent authority which rests on an estoppel to deny authority based on a third party's reliance on the appearance of authority permitted by the principal is not involved here. None of the tenants injured by the fire claim any reliance upon such appearance of authority.

In *Curtis Circulation Co. v. Henderson,* 232 Ark. 1029, 342 S. W. (2d) 89 (1961), the court said:

> Further, the doctrine of 'apparent scope of authority' has no application in tort cases unless there has been reliance upon apparent authority which caused the injury complained of. See Restatement of Agency (2d) Sec. 265, Subsection 2, p. 575, and comment on same at page 576.

In *Schlick v. Berg,* 205 Minn. 465, 286 N. W. 356 (1939), we find the following:

> For plaintiff reliance is correctly put upon authority in fact rather than authority resulting from holding out or estoppel. That is because authority by holding out is of no importance until a third party relies thereon. See *Eberlein v. Stockyards Mortgage & Trust Co.,* 164 Minn. 323, 204 N. W. 961; *Karon v. Kellogg,* 195 Minn. 134, 261 N. W. 861. In the ordinary personal injury case the injured person does not rely upon authority of any kind in getting hurt. Proof of actual authority is therefore essential to recovery. Restatement, Agency, § 265; 2 Mechem, Agency (2 ed.) §§ 1858, 1859. To this there are some exceptions. Restatement, Agency, §§ 266, 267.

We are of the opinion that summary judgment in favor of Burger Chef was appropriate because there was no genuine issue of material fact remaining.

We would affirm.