785 S.E.2d 208

BANK OF NEW YORK MELLON TRUST COMPANY, National Association f/k/a The Bank of New York Trust Company, N.A. as successor to JP Morgan Chase Bank N.A. s/b/m Bank One National Association as Trustee for RAMP 2002RS5, Plaintiff,

v.

Chartrease GRIER, Palmetto Health Alliance, and Palmetto Richland Memorial, Defendants.

Chartrease Grier, Appellant,

v.

Nationwide Property & Casualty Insurance Company and Tonya D. Parks, Respondents.

Appellate Case No. 2013-002403.
No. 5385.

Court of Appeals of South Carolina.

Heard Nov. 4, 2015.
Decided March 2, 2016.

M. Allison Moon and Sarah E. Brown, of Moon Law Firm, and Scott J. Bradley, of The Joel Bieber Firm, of Greenville; and Michael G. Wimer, pro hac vice, all for appellant.

Michael J. Anzelmo, Alana Odom Williams, and Jay T. Thompson, all of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for respondents.

WILLIAMS, J.

Chartrease Grier appeals the circuit court's grant of summary judgment in favor of Nationwide Property & Casualty Insurance Company (Nationwide), arguing the court erred in (1) finding section 38-75-740 of the South Carolina Code (2015) was inapplicable to homeowners insurance policies, (2) ruling her breach of contract claim failed as a matter of law, (3) concluding Nationwide's refusal to pay was not in bad faith, and (4) denying Grier's motion to amend her third-party complaint. We affirm.

## FACTS/PROCEDURAL HISTORY

In 2006, Grier purchased a homeowner's insurance policy from Nationwide through her insurance agent, Tonya Parks. The policy covered her home and its contents in Columbia, South Carolina. The Bank of New York Mellon Trust Company (the Bank) held a mortgage on Grier's property, and GMAC Mortgage, LLC (GMAC) serviced the mortgage on behalf of the Bank. Pursuant to the mortgage, Grier was required to pay the homeowners insurance premium as a part of her monthly mortgage payment into an escrow account managed by GMAC.

In March or April of each year, GMAC issued a check to Nationwide for the amount of the insurance premium it withdrew from the escrow account, and Nationwide renewed the policy. Nationwide renewed Grier's homeowner's policy annually from 2007 to 2010. In January 2011, however, Nationwide decided not to renew Grier's policy—which was set to expire on March 24, 2011—because she failed to remedy various hazards and risks on her property. Nationwide claims it mailed proper notice of nonrenewal to Grier on January 14, 2011, at her home address listed on the policy.

On March 11, 2011—before the policy expired—a GMAC representative contacted Nationwide about paying the premium for Grier's policy for the upcoming renewal period. Grier contends Nationwide welcomed the payment in this conversation and stated it would renew the policy if it received the premium.

Thereafter, GMAC mailed a check to Nationwide on March 15, 2011, for the same amount it submitted the prior year for the renewal. Nevertheless, because no active policy was listed

for Grier in its records, Nationwide returned the premium to Grier by a check dated April 1, 2011.

On April 6, 2011, a fire destroyed Grier's home, leaving it uninhabitable. Grier filed a claim for insurance coverage, but Nationwide denied her claim, explaining that Grier had no policy in place. Grier soon defaulted on her mortgage, and on September 13, 2011, the Bank filed a foreclosure action against her.[1] Grier answered and filed a third-party complaint against Nationwide and Parks,[2] asserting causes of action for breach of contract, bad faith failure to pay her insurance claim, and indemnity and contribution.

While the parties participated in discovery, Grier filed a motion on June 8, 2012—with leave of court pursuant to Rule 15(a), SCRCP—to amend her complaint and add a cause of action for negligent misrepresentation against Nationwide. Grier asserted Nationwide breached its duty of care by falsely "representing to GMAC that [Grier's] policy would be renewed upon payment of the policy premium."

On November 5, 2012, Grier filed a motion for summary judgment, arguing Nationwide violated section 38–75–740 of the South Carolina Code by failing to deliver written notice to Parks, the insurance agent of record, that Grier's policy was not being renewed. According to Grier, Nationwide could not deny coverage because its attempt to nonrenew the policy was invalid. Nationwide filed its own motion for summary judgment the following day, arguing it properly denied coverage because no policy was in place.

After conducting a hearing on the cross-motions for summary judgment on November 28, 2012, the circuit court granted summary judgment in favor of Nationwide. In its order, the court held Grier's breach of contract claim against Nationwide failed as a matter of law. Contrary to Grier's assertion, the court determined section 38–75–740 did not apply to the nonrenewal of homeowners insurance policies. The court instead found that Nationwide complied with section 38–75–1160 of the South Carolina Code (2015), under which notice for

---

1. The circuit court approved a joint stipulation of dismissal of the foreclosure action between the Bank and Grier on November 27, 2012.

2. Grier did not appeal the circuit court's rulings as to Parks.

the nonrenewal of a homeowner's insurance policy must be delivered or mailed to the named insured. Because Nationwide produced sufficient proof of mailing the notice of nonrenewal to Grier, the court concluded the policy was not in effect at the time of Grier's loss and, therefore, Grier could not sue for breach of a nonexistent contract. As to whether Nationwide reached an agreement with GMAC that the policy would be renewed if Nationwide received the required premium, the court found Grier provided no evidence of communication between GMAC and Nationwide to demonstrate such an agreement existed.[3]

The circuit court next granted summary judgment to Nationwide on Grier's bad faith failure to pay claim. Given that no policy was in effect, the court held Grier's cause of action failed as a matter of law because Nationwide had a reasonable, objective basis for denying her claim for coverage.

Lastly, the circuit court denied Grier's motion to amend her third-party complaint to add a cause of action for negligent misrepresentation against Nationwide. The court concluded Grier did not allege Nationwide made a misrepresentation to her, but rather to a third party—GMAC. Because GMAC was not acting on Grier's behalf, the court reasoned the cause of action was futile and failed as a matter of law. The court further held Nationwide would be prejudiced if it granted leave to amend because Nationwide lacked the opportunity to defend against this new claim. In reaching this decision, the court noted the case had already been placed on the jury trial roster and Nationwide had already taken Grier's deposition.

Thereafter, Grier filed a motion to alter or amend judgment, and the circuit court denied her motion on September 23, 2013. This appeal followed.

## STANDARD OF REVIEW

"An appellate court reviews a grant of summary judgment under the same standard applied by the [circuit] court pursuant to Rule 56, SCRCP." *Lanham v. Blue Cross & Blue Shield of S.C., Inc.*, 349 S.C. 356, 361, 563 S.E.2d 331, 333

---

3. Although we note that Grier did alert the circuit court to the existence of a recorded phone conversation between representatives of GMAC and Nationwide at the motions hearing, this evidence does not affect our disposition of the case.

(2002). Rule 56(c), SCRCP, provides that summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that . . . no genuine issue [exists] as to any material fact and that the moving party is entitled to a judgment as a matter of law."

**LAW/ANALYSIS**

**I. Notice Requirement for the Nonrenewal of Homeowners Insurance**

Grier first argues the circuit court erred in holding section 38–75–1160, rather than section 38–75–740, governs the notice requirements for the nonrenewal of a homeowner's insurance policy. We disagree.

"Determining the proper interpretation of a statute is a question of law, and [the appellate court] reviews questions of law de novo." *Town of Summerville v. City of N. Charleston,* 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008). "The primary purpose in construing a statute is to ascertain legislative intent." *Gordon v. Phillips Utils., Inc.,* 362 S.C. 403, 406, 608 S.E.2d 425, 427 (2005). "A specific statutory provision prevails over a more general one." *Wooten ex rel. Wooten v. S.C. Dep't of Transp.,* 333 S.C. 464, 468, 511 S.E.2d 355, 357 (1999); *see also Capco of Summerville, Inc. v. J.H. Gayle Constr. Co., Inc.,* 368 S.C. 137, 142, 628 S.E.2d 38, 41 (2006) ("Where there is one statute addressing an issue in general terms and another statute dealing with the identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect.").

Located in article 9 of chapter 75 of the South Carolina Insurance Code (the Insurance Code), section 38–75–740 addresses the cancellation, nonrenewal, and renewal of property and casualty insurance. The statute, in pertinent part, provides that "[a] policy written for a term of one year or less may be nonrenewed by the insurer at its expiration date by giving or mailing written notice of nonrenewal to the insured and the agent of record." S.C.Code Ann. § 38–75–740(b). According to the Insurance Code, section 38–75–740 "applies to all property insurance and casualty insurance, . . . except for . . . any other type of property or casualty insurance as to

which there are specific statutory provisions of law governing cancellation, nonrenewal, or renewal of policies." S.C.Code Ann. § 38–75–710 (2015). Thus, in the absence of a more specific provision, section 38–75–740 generally governs the manner in which an insurer must nonrenew a policy for property or casualty insurance.

In 2004, the General Assembly enacted the Property and Casualty Insurance Personal Lines Modernization Act (the Act). *See* Act No. 290, 2004 S.C. Acts 2889–2909. As part of the Act, the General Assembly added article 13, titled "Property Insurance Cancellation and Nonrenewal," to chapter 75 of the Insurance Code. *See* Act No. 290, 2004 S.C. Acts 2896–2907. Article 13 specifically "applies only to property insurance on risks located in this State." S.C.Code Ann. § 38–75–1130(A) (2015). Located in article 13, subsection 38–75–1160(A)(1) provides that "a cancellation or refusal to renew by an insurer of a policy of insurance covered in [article 13] is not effective unless the insurer delivers or mails to the named insured at the address shown in the policy a written notice of the cancellation or refusal to renew."

Because the scope of article 13 is limited to governing the nonrenewal of policies for "property insurance on risks located in this State," we hold subsection 38–75–1160(A)(1) constitutes one of the "specific statutory provisions" contemplated by subsection 38–75–740(b) in article 9. Therefore, when an insurer attempts to nonrenew a policy that provides "property insurance on a risk located in this State," the insurer must follow the procedures outlined in subsection 38–75–1160(A)(1), not those provided in subsection 38–75–740(b). See *Wooten,* 333 S.C. at 468, 511 S.E.2d at 357 (stating a specific statutory provision prevails over a more general one); *Capco,* 368 S.C. at 142, 628 S.E.2d at 41 (providing when one statute addresses an issue in general terms and another deals with the same issue in a more specific and definite manner, the more specific statute will prevail).

Turning to the facts of the instant case, given that the homeowner's policy provided "property insurance on a risk located in this State," Grier's home, Nationwide was required to follow the nonrenewal procedures outlined in subsection 38–75–1160(A)(1). Specifically, to successfully nonrenew Grier's

homeowner's policy, Nationwide had to deliver or mail notice of nonrenewal to Grier. Because Nationwide gave proper notice, as evidenced by its proof of mailing to Grier's address listed on the policy, we find Nationwide complied with the appropriate statute and, therefore, effectively nonrenewed Grier's homeowner's policy.

Accordingly, we find the circuit court properly determined subsection 38–75–1160(A) was the controlling provision in this case and Nationwide fully complied with the requirements of the statute in nonrenewing Grier's policy.

## II. Breach of Contract

Grier next contends the circuit court erred in holding her breach of contract claim against Nationwide failed as a matter of law. According to Grier, GMAC—the Bank's mortgage servicer—renewed the insurance policy on her behalf as her agent when it contacted Nationwide regarding the payment of the annual premium. We disagree.[4]

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." *Froneberger v. Smith*, 406 S.C. 37, 49, 748 S.E.2d 625, 631 (Ct.App.2013) (quoting RESTATEMENT (THIRD) OF AGENCY § 1.01 (AM. LAW INST. 2006)). "Generally, [a]gency is a question of fact." *Id.* (alteration in original) (quoting *Gathers v. Harris Teeter Supermarket, Inc.*, 282 S.C. 220, 226, 317 S.E.2d 748, 752 (Ct.App.1984)). A court ordinarily should not resolve an agency question on summary judgment if "*any* facts giv[e] rise to an inference of an agency relationship." *Fernander v. Thigpen*, 278 S.C. 140, 142, 293 S.E.2d 424, 425 (1982) (quoting *Reid v. Kelly & Play–Air,*

---

4. Likewise, we reject Grier's alternative argument that she was a third-party beneficiary to a contract of renewal between GMAC and Nationwide. *See Helms Realty, Inc. v. Gibson–Wall Co.*, 363 S.C. 334, 340, 611 S.E.2d 485, 488 (2005) ("A third-party beneficiary is a party that the contracting parties intend to directly benefit."). GMAC and Nationwide were not contracting parties. The contract of insurance was between Nationwide as the insurer and Grier as the insured policyholder. Even assuming, *arguendo*, GMAC and Nationwide were contracting parties, GMAC did not intend to directly benefit Grier. GMAC's sole reason for contacting Nationwide was to ensure that an active insurance policy covered the Bank's collateral.

*Inc.,* 274 S.C. 171, 174, 262 S.E.2d 24, 26 (1980)). If any facts tend to prove an agency relationship, then the question becomes one for the jury and granting summary judgment is inappropriate. *Froneberger,* 406 S.C. at 50, 748 S.E.2d at 631 (quoting *Gathers,* 282 S.C. at 226, 317 S.E.2d at 752).

In the instant case, although GMAC, the Bank's mortgage servicer,[5] submitted the annual insurance premiums for Grier's policy to Nationwide, GMAC was not subject to Grier's control. Under the mortgage, GMAC—acting on behalf of the Bank—required that Grier purchase homeowners insurance on the dwelling to protect the Bank's collateral for the mortgage loan. Further, GMAC required that the insurance policy contain a standard mortgage clause listing it as the mortgagee. Grier's choice of insurance was also subject to GMAC's approval. Additionally, if Grier failed to maintain property insurance, then the mortgage authorized GMAC to force-place a policy on Grier's home at her expense. Therefore, we find no evidence in the record suggests Grier exercised any control over GMAC's use of the escrow funds. *See Froneberger,* 406 S.C. at 49, 748 S.E.2d at 631 (noting an agent must act on behalf of, and be subject to the control of, the principal); *see also, e.g., Telfair v. First Union Mortgage Corp.,* 216 F.3d 1333, 1340–42 (11th Cir.2000) (finding no agency relationship between a mortgage lender and a borrower concerning the administration of an escrow account). To the contrary, our review of the record reveals GMAC controlled the use of the escrow funds.

---

**5.** "Mortgage servicing is '[t]he administration of a mortgage loan, including the collection of payments, release of liens, and payment of property insurance and taxes.'" *Bank of Am., N.A. v. Draper,* 405 S.C. 214, 221, 746 S.E.2d 478, 481 (Ct.App.2013) (alteration in original) (quoting *Mortgage Servicing,* BLACK'S LAW DICTIONARY (9th ed.2009)).

[A] servicer is defined as the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan). Servicing is defined as receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ... and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

*Id.* (first alteration in original) (quoting *Bryant v. Wells Fargo Bank, Nat'l Ass'n,* 861 F.Supp.2d 646, 658 (E.D.N.C.2012)).

Accordingly, because GMAC was not Grier's agent, we find the circuit court properly ruled that Grier's breach of contract claim failed as a matter of law.

### III. Remaining Issues

In light of our findings that Nationwide provided proper notice of nonrenewal and Grier's breach of contract claim failed as a matter of law, we decline to address the remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).

### CONCLUSION

Accordingly, the circuit court's grant of summary judgment in favor of Nationwide is

**AFFIRMED.**

HUFF, A.C.J., and THOMAS, J., concur.